CLARA B. and BERT E. MORRIS v. BROOKS E. DAVIS, LINA H. DAVIS, IRA B. BURNS, Trustee, and E. B. SWEITZ, Appellants.—66 S. W. (2d) 883.

Division Two, December 20, 1933.

H. S. *Julian* for appellants.

412

*Louis N. Goessy, John W. Kachelhofer* and *Calvin, Vandeventer & Kimbrell* for respondents.

FITZSIMMONS, C.—Defendants Ira B. Burns, Trustee, and E. B. Sweitz, come to this court upon appeal from a decree of the Circuit Court of Jackson County against all defendants, quieting the title of respondents to certain real property in Kansas City. Defendants Brooks E. Davis and Lina H. Davis were served by order of publication. They did not plead and the decree went by default against them. The decree set aside a warranty deed to the Kansas City property in suit executed by respondents Morris to defendants Davis in exchange for certain real estate in Jackson County near Independence. It also annulled a warranty deed to the same Kansas City property executed by defendants Davis to appellant Sweitz, and a part purchase money deed of trust executed by Sweitz to appellant Burns, as trustee for defendants Davis, and quieted title to the property in respondents Morris.

I. Respondents' second amended petition, upon which issue was joined, alleged that respondents Morris and defendants Davis by a contract in writing dated August 17, 1929, agreed to an exchange of a five-acre tract in Jackson County, near Independence, Missouri. owned by defendants, Davis, subject to a balance of $5,000 due upon a deed of trust, for Lot 9, Hyde's First Addition to Kansas City,

Missouri, owned by respondents Morris, free of encumbrances. The exchange contract, as pleaded and proved further provided, among other things, that within ten days from its date the parties would deliver at the office of Mansfield Brothers Mortgage Company, complete abstract of title to their respective properties including certificates in full as to taxes, judgment or other liens. Each party was to have five days from date of delivery for examination of abstracts, and for report to the other party of defects therein, if any, in writing at the office of Mansfield Brothers Mortgage Company. If upon examination it was found that the title to any of the properties being exchanged was defective, the party who was to convey or have conveyed said property, agreed to have the defects rectified within a reasonable time, which was not to exceed thirty days from date of the written notice of defects. In case such defects were not rectified within time of limit, the contract was to be null and void at the option of the party not in default, and abstracts were to be returned to their respective owners.

The exchange contract further provided that, within ten days from its date, the parties thereto were to "execute and deposit with Mansfield Brothers Mortgage Company the deed to their respective properties to be held in trust by them until the completion of the contract, and the said Mansfield Brothers Mortgage Company is authorized to deliver said deed on completion of this contract." The exchange contract further provided that the place to make tender of the papers in the transaction was to be the office of Mansfield Brothers Mortgage Company, Kansas City, Missouri, and legal tender made at that office was to be binding on either party.

Respondents further alleged that the parties delivered their respective abstracts to each other and that, on September 4, 1929, respondents Morris, in writing, pointed out to defendants Davis certain defects in the title to the Jackson County five-acre tract. The first objection was the uncertainty of description of the land affected by a recorded exchange contract executed in 1925 by a former owner of a ten-acre tract of which the five-acre tract of defendants Davis was a part. The second objection was the requirement of a showing that a former grantee named Sievers and a succeeding grantor named Sevier were one and the same person. A demand also was made for a statement in writing showing that the balance due on the deed of trust on the five-acre tract was only $5,000, as was recited in the contract. Other objections raised need not be mentioned. The second amended petition further alleged that respondents, upon pointing out the objections stated on September 4, 1929, were assured that the defects would be cured within thirty days prescribed by the exchange contract, and at the same

time they were induced to execute a warranty deed to their Kansas City property and to deliver it in trust or escrow under the exchange contract and under a further written agreement signed by Mansfield Brothers Mortgage Company by Frank B. Mansfield, its president. By this subsequent agreement the Mansfield Company acknowledged the receipt of respondents' warranty deed in escrow to fulfill the requirements of the exchange contract of August 17, 1929. The Mansfield Company also agreed that it would not deliver respondents' warranty deed to Mr. and Mrs. Davis, the grantees, until the title to the property set out in the exchange contract as belonging to the defendants Davis was perfected.

The petition further charged that the defendants Davis failed and refused to rectify the defects in the title to their Jackson County property within the thirty days limited; that after the expiration of these thirty days respondents in writing notified Mansfield Brothers Mortgage Company, the depositary, not to deliver their warranty deed to the defendants Davis nor to any one else nor to permit the deed to be filed for record, but to return the same to respondents as provided in the exchange contract; that they further notified the depositary and the defendants Davis that, by reason of the default and failure of the defendants, the exchange contract was ended and terminated for all purposes. The petition further charged that despite this notice and in violation of the terms of the exchange contract and the subsequent escrow agreement and contrary to law the warranty deed of the respondents conveying to the defendants Davis to the Kansas City property was recorded October 7, 1929; that defendants Davis also on October 7, 1929, caused to be filed for record a warranty deed from themselves to appellant Sweitz, conveying respondents' Kansas City property and that on the same day and date a deed of trust executed by appellant Sweitz to appellant Burns as trustee for the defendants Davis was filed for record. These several instruments were charged to constitute a cloud on the respondents' property and were charged also to have been filed for record with intent to cheat and defraud respondents.

The second amended petition further alleged that appellant Sweitz had filed an unlawful detainer action against respondents here for possession of the Kansas City property before a justice of the peace from whom the case was transferred by certiorari to the Circuit Court of Jackson County at Kansas City; that this action was in confederation with the other defendants and a part of the intent and design to cheat, trick and defraud respondents out of their property and to deprive them of the possession of the same. The petition further alleged that in this unlawful detainer proceeding they did not have a full, adequate and complete remedy at law and that therefore

they had to resort to a court of equity to determine all their rights and interests. The petition also prayed for a cancellation of the two warranty deeds and of the deed of trust, an adjudication that respondents were the owners in fee simple of the property and were entitled to the peaceable possession of the same, and for an injunction against the further prosecution of the action in unlawful detainer until all the rights of parties were finally determined in the equity suit.

Appellant Sweitz, by his answer set up: (1) a general denial; (2) that he acquired the property by warranty deed from the defendants Davis; that he was an innocent purchaser for a valuable consideration without notice that respondents claimed any interest or title; that the records of Jackson County showed a clear and unincumbered title in the defendants Davis; that he spent sums totaling $1,650 in the repair of the property; (3) that as part of the purchase price of the lot he delivered to defendants Davis his negotiable promissory note for $4,000 secured by deed of trust on the lot; that he was informed and believed and stated as a fact that defendants Davis had sold and transferred the note secured by deed of trust for value and before maturity, and that the owner and holder of the note was a necessary party to the suit; (4) that the respondents Morris improperly attempted to unite several inconsistent causes of action namely: their suit in equity and an action for unlawful detainer which is at law; that the trial court was without jurisdiction of the unlawful detainer action which was still pending in the circuit court.

Appellant Burns by a separate answer made a general denial and also stated that he had no interest in the subject matter of the suit other than that, without his knowledge, he was named as trustee in the deed of trust executed by appellant Sweitz; that he was informed and believed that the notes secured by deed of trust were not owned by defendants Davis. He prayed to be dismissed with his costs.

Respondents by their reply to the answer of appellant Sweitz denied that Sweitz bought the property on September 7, 1929, in good faith and for a valuable consideration and alleged that on that date the record legal title to the property stood in the joint names of respondents and by reason thereof Sweitz had constructive notice of the rights and interests of respondents to the property and that, if Sweitz bought the property on or about September 7, 1929, he did so with full notice of respondents' rights and purchased the property subject to those rights. The reply also traversed the allegations of the answer concerning the $4,000 deed of trust and the unlawful detainer action.

II. Appellants' principal assignment of error, stated in sundry forms, is that there was not substantial evidence to support the decree.

We are at a loss to see how the decree adversely affected any sub-stantial rights of appellant Burns, trustee under the Sweitz deed of trust. By his answer Mr. Burns stated that he had no interest in the subject matter of the suit other than that, without his knowl-edge, he was named as trustee in the deed of trust. He also stated in his answer, as did appellant Sweitz, that he was informed and he believed that the notes secured by the deed of trust were not owned by the defendants Davis. There was no evidence whatever to sup-port that allegation. The defendants Davis, the payees of the notes, were brought within the jurisdiction of the court by constructive service and were bound by the decree. Appellant Sweitz, the maker of the notes ánd first party in the deed of trust, defended by answer, also by appearance by counsel at the trial and by appeal here. Mr. Burns by his answer prayed for relief against the burden of costs. The decree assessed the costs against Sweitz. Mr. Burns, as an at-torney, took an active part in the trial. But upon the record he rep-resented himself. Therefore we leave Mr. Burns' appeal to abide our examination of the grievances of Mr. Sweitz.

Should the decree stand against appellant Sweitz? Respondent Morris was a meat cutter in Kansas City. For twenty-five years prior to August, 1929, he and his wife owned the Kansas City lot which is the subject matter of this suit. It was improved with a three-story dwelling house, No. 2127 Montgall Avenue. The property was free from encumbrance. They had not occupied that house for seventeen years, but were living elsewhere in Kansas City when, in August, 1929, they met a real estate man named Norrid to whom they dis-closed their yearning to live in wide-open spaces. On August 17, 1929, Norrid, together with J. W. Asher, a representative of Mansfield Brothers Mortgage Company, took to the Morris home in Kansas City the exchange contract which was pleaded and they induced the re-spondents to sign it. The respondents inquired whether they could move into the five-acre tract. Their visitors stated that they might do so at once, and so the respondents did within a few days, although they had taken but the first step in the deal. At the time of signing the contract, on August 17, also, respondents gave an abstract of title to their Kansas City property to Messrs. Norrid and Asher, in prompt compliance with the ten-day period of limitation fixed by the contract. The Mansfield Brothers Company, for the defend-ants Davis, handed to respondents an abstract to the five-acre tract on August 27, 1929. Eight days later, namely, on September 4, 1929, the respondents Morris and Mr. Goessy, their attorney, con-ferred with Frank B. Mansfield, president of the mortgage company. Mr. Goessy presented to Mr. Mansfield a copy of Goessy's letter of date August 31, advising respondent Morris that the title to the five-acre tract was in defendant Brooks E. Davis, subject to the ex-

ceptions which we have noted in the summary of the pleadings. Goessy and Mansfield discussed the objections raised to the title to the five-acre tract and several methods of correction, and Mansfield promised to furnish a guaranteed title. Goessy left the conference after directing his clients, the respondents Morris, not to sign anything. After Goessy's departure Morris and wife signed the warranty deed to their Kansas City property, running from them to the defendants Davis, and they gave it to Mansfield in return for his written instrument, which, as pleaded and proved, acknowledged receipt of the deed in escrow to fulfill the requirements of the exchange contract, and agreed, on behalf of the Mansfield Brothers Mortgage Company, not to deliver to the defendants Davis the deed of the respondents Morris until the title to the Davis property "is perfected satisfactorily to Mr. and Mrs. Morris."

We pause to examine some assignments of error predicated upon this part of the narrative. The letter of advice from Goessy to the respondents stating objection to the title was admissible. It was not subject to attack upon the ground that it was merely Goessy's opinion of the state of the title and that the abstract was the best evidence. The respondents were required to present their objections within a given time. This respondents did when Mr. Goessy presented to Mr. Mansfield the written statement of objections to the title of defendants Davis.

It may be conceded that Mr. Mansfield, by agreeing not to deliver to defendants Davis the deed of respondents Morris until the title to the Davis property had been perfected satisfactorily, went beyond the terms of the exchange contract. But this is a suit in equity, founded in fact upon the wrongful acts of the Mansfield Company, the escrow party and as such the trustee of an express trust. [Seibel v. Higham, 216 Mo. 121, 115 S. W. 987.] That supplementary agreement was used as a fulcrum to pry out of respondents Morris the warranty deed, after their lawyer had departed leaving instructions to them not to sign anything. Besides, defendants Davis did not comply with those terms of the original contract which obligated them to rectify reported defects in the title to their property within a reasonable time, not to exceed thirty days, at the expiration of which period the contract became null and void at the option of the party not in default. The complaint therefore, of Mansfield's want of authority to change the original contract is without merit.

Resuming our narrative, Mr. Sweitz, testifying on his own behalf, and being the only witness called by any defendant, stated that he was a special agent for an insurance company. He called Chicago his home, but he resided anywhere in four states, including Missouri. About September 4, 1929, he called up Mr. Frank I. Welborn, a representative of Mansfield Brothers Mortgage Company, and informed Mr. Welborn that he, Sweitz, had some money to invest in real estate.

Thereupon, Sweitz testified, Mr. Welborn became his agent for the purchase from defendants Davis of what was or had been the Kansas City property of respondents Morris. On September 7, 1929, Welborn delivered to Sweitz a contract of sale and showed to him a warranty deed to this property executed by the Davises to Sweitz. The price was $4,200 payable $200 cash and $4,000 by note secured by deed of trust on the purchased property executed by Sweitz to Burns, trustee for the defendants Davis. Sweitz made the two hundred dollar payment to Welborn and also delivered to him the deed of trust papers. We may stop here to note that, according to the testimony of respondents and of Goessy, Welborn, an agent and servant of the Mansfield Company, was present on September 4, in the office of that company at the conference between Mansfield, the respondents and Goessy. Welborn attached his notarial certificate of acknowledgment, dated September 4, 1929, to the warranty deed to the Kansas City property. This deed, on that day, after the departure of their attorney, the respondents placed with Mansfield in escrow, under his agreement against delivery to the defendants Davis. We may infer therefore that Welborn was present at the further proceedings which Mansfield had with the respondents after Goessy left. He came into full knowledge of the trusteeship which his employer, the Mansfield Company, had accepted with respect to respondents' Kansas City property at or about the time he, Welborn, became the agent of Sweitz to buy the property. We also may observe that $200, the cash payment which Sweitz made, was the amount of a commission mentioned in the exchange contract to be paid by the defendants Davis to Wade Norrid, described in the contract as the agent of the Davises, and remembered as the dealer who induced the respondents to sign the original contract. Under examination by the judge presiding at the trial Sweitz testified that he did not make an investigation of the record title to the property in suit, nor conduct any other inquiry about it at the time he bought it. He knew nothing about the deed which respondents had deposited in the Mansfield office. He relied entirely on Welborn who, Sweitz knew, was in the Mansfield office.

On October 5, 1929, the respondents Morris abandoned the Davis property near Independence and took possession of the property at 2127 Mongall Avenue, Kansas City, which is the subject matter of this suit. On the same day, they gave notice to the Mansfield Company that they (respondents) had elected to declare the exchange contract null and void, and that they were that day vacating the Davis place and occupying their own house in Kansas City. That night, October 5, Mansfield, Welborn and appellant Sweitz went to the Montgall Avenue dwelling, and found Mrs. Morris there. Mansfield and Welborn in the presence of Sweitz severely reproached her for cancelling the contract and taking possession of the Kansas City

dwelling. The record title to that property was at that time still in the respondents, for their warranty deed to the defendants Davis, the warranty deed from the latter to Sweitz and the deed of trust from Sweitz to Burns, trustee, were not recorded until October 7, 1929.

Although, on September 4, when respondents deposited their warranty deed with Mr. Mansfield, the latter exhibited to them an instrument which he stated was the deed of the defendants Davis conveying to respondents the five-acre tract in Jackson County, yet on September 23, Mr. Mansfield informed respondents that Mrs. Davis had declined to sign the deed and he (Mansfield) was going to Kansas that night to induce her to sign. A deed from Davis and wife was not tendered to the respondents before the cancellation of the contract on October 5. Nor were the flaws in the Davis title, of which respondents had complained, ever rectified.

Concerning the repairs to the Montgall Avenue property which appellant alleged in his answer that he made at a cost of $1,650 there is no evidence to warrant the conclusion that Sweitz caused the repairs to be done or incurred any liability for them. The evidence supports the inference that Sweitz only invested $200 which he paid upon the purchase price and that Mansfield ordered and controlled the making of repairs. A further fact is that neither the respondents Morris nor the appellant Sweitz at any time met the defendants Davis.

What of the law applicable to these facts? Of a deposit of a deed in escrow the court said in Seibel v. Higham, 216 Mo. 121, 115 S. W. 987, l. c. 990: " 'The distinctive feature of an escrow is the delivery of a deed to a third person to await the performance of some condition, whereupon the deed is to be delivered to the grantee and the title is to pass.' [2 Jones on Real Property, sec. 1303.] In such case it is not a deed until the condition is performed. The depositary of an escrow is sometimes spoken of as the agent of the grantor and sometimes as the agent of both parties, and whilst that may be correct, in a limited sense, yet strictly speaking he is not an agent at all; he is a trustee of an express trust, with duties to perform for each, which neither can forbid without the consent of the other." The exchange contract in the instant case recognized in terms an escrow as of the nature defined in the Seibel case by providing that the parties were to deposit with Mansfield Brothers Mortgage Company the deeds to their respective properties "to be held in trust" by the Mansfield Company until the completion of the contract and with authority to the Mansfield Company to deliver the deeds on completion of the contract.

In Bales v. Roberts, 189 Mo. 49, 87 S. W. 914, this court stated the principle that an escrow affects not alone the delivery of the deed but the title to the land. We quote the following apt and

applicable language of this court in the Bales case (87 S. W. 1. c. 920) : ''A rescission of the contract would itself suffice to annul the deed; but, further, its annulment is justified because 'a deed,' as quaintly said by an old law writer, 'speaks alone by delivery.' Bales' deed, in the eye of the law, as it lay in escrow, was a mere scroll. Its wrongful and untimely delivery by the custodian must not be allowed to be of any efficacy. As aptly put by a text-writer: 'A deed or other instrument deposited as an escrow is nothing more than a mere scroll until the condition is fully performed or the contingency happens upon the faith of which it was deposited; and, this being so, no title passes prior to that time without the grantor's consent. The grantee or the other party, who is to receive the benefit of the instrument cannot acquire the title by gaining the possession of it by theft, by fraud, or by the voluntary act of the depositary, but only by the performance of the condition or the happening of the contingency.' [11 Am. & Eng. Ency. of Law (2 Ed.), p. 348.] The record of this deed in Vernon County, under the facts of this case, created a malignant cloud on Bales' title, and became an affront to justice, a sin against the law. It was rightly annulled.''

A corollary of the above-quoted rule is that, since the grantee cannot acquire title by gaining wrongful possession of the deposited instrument, a bona fide purchaser from the grantee for value cannot acquire title in the absence of elements of estoppel. [Taylor v. Davis, 72 Mo. 291; Seibel v. Higham, 216 Mo. 121, 115 S. W. 987; University of Missouri Bulletin, Law Series, 43, p. 12, and cases from this and other jurisdictions there cited.] We find no elements of estoppel here. In Taylor v. Davis, supra, the facts are sufficiently similar to the facts here to make that case controlling. There the grantee procured by subterfuge the deed which had been deposited in escrow. Here the depositary, in breach of its trust, made a wrongful delivery of the deposited deed. In the Taylor case the grantee and a confederate sold a deed of trust which they had imposed upon the land to a bank which, before it bought the security, made a careful examination of the records and found the title good. Here appellant Sweitz showed no such diligence. Yet the deed of trust held by the defendant bank as well as the deed which had been in escrow were annulled. The opinion in the Taylor case is terse and to the point. Therefore we quote it in full (72 Mo. 1. c. 292) :

''SHERWOOD, C. J. This case is too plain for any extended discussion, or the lengthy review of the authorities. There was no delivery of the deed, that instrument having been fraudulently obtained by Davis. Consequently, no title passes to Davis or those claiming under him. Therefore, judgment affirmed. All concur.''

There was sufficient evidence in the instant case to justify the chan-

cellor in finding that the Mansfield Brothers Mortgage Company, the trustee of an express trust, violated that trust by making a delivery of respondents' deposited deed without authority to do so under the contract, and by lending itself to the conveyance of the property by the defendants Davis to appellant Sweitz.

The rule being, in the circumstances of this case, that even a bona fide purchaser for value acquires no title, the defense of Sweitz that he was such a purchaser does not avail him. But in truth Sweitz was not a bona fide purchaser for value. His agent Welborn well knew the restrictions upon the delivery of respondents' warranty deed. While having that knowledge, Welborn brought about the attempted conveyance of the property to Sweitz and thereby aided in working a delivery of respondents' deed in breach of the trust upon which Mansfield Brothers Mortgage Company held that instrument in escrow. In addition the record title to the property, at the time of its purported sale to Sweitz and for a month thereafter, was in respondents.

III. Appellant Sweitz makes several assignments of error which center about the plea in his answer that there was a misjoinder in respondents' second amended petition of a cause of action in equity to quiet title and of a cause of action at law for unlawful detainer. As we read the pleadings there was no such misjoinder. Respondents commenced their suit on October 11, 1929, by filing their original petition to quiet title against Brooks E. Davis and Lina H. Davis, as sole defendants. In that petition, respondents made no mention of appellant Sweitz or of the warranty deed to him or of the deed of trust executed by him. Subsequently and on October 24, 1929, Sweitz began an unlawful detainer action before a justice of the peace against the respondents here. Respondents then filed their second amended petition in which they joined Sweitz as a defendant and recited his connection with the deal. They also alleged the institution of the unlawful detainer action, pleaded that they did not have a full, adequate and complete remedy at law, and prayed, among other things, that Sweitz be enjoined from the prosecution of the unlawful detainer action until all the rights and interests of all parties were determined by the court having jurisdiction of the suit to quiet title. This was in accordance with familiar and approved practice. Equitable defenses may not be made in unlawful detainer cases which are cognizable in the first instance only before justices of the peace. Therefore a defendant in such a case who relies and depends upon equitable defenses must bring an original suit before a chancellor. In that suit, upon proper pleadings, there may be made a determination of whatever legal rights the plaintiff in the unlawful detainer action may assert and of whatever equitable rights the defendant in that action

may set up, with injunctive relief against the further prosecution of the unlawful detainer action pending the final disposition of the suit in equity. [Ridgely v. Stillwell, 28 Mo. 400; Finney v. Cist, 34 Mo. 303; State ex rel. Jackly v. Taylor, 210 Mo. App. 195, 242 S. W. 997.] Respondents followed that course.

No reversible error appearing and we being of opinion that the chancellor decided this case for the right parties and that he rendered a proper decree, the same is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.