HARRY SANDERS, APPELLANT, v. CLELIA BROOKS AND A. F. OBERHEL-MAN, RESPONDENT.—183 S. W. (2d) 353.

Kansas City Court of Appeals. October 2, 1944.

*Frank F. Catron* for appellant.

488

*Blackwell & Sherman* for respondents.

DEW, J.—This is an action in equity to annul, and to enjoin the enforcement of, a judgment for rent rendered by a Justice of the Peace. A general demurrer was filed by respondents to appellant's petition in equity on the ground that the same did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the trial court. Plaintiff, appellant herein, refused to plead further, whereupon judgment was rendered, dismissing the cause. Plaintiff has appealed.

The petition involves two other lawsuits, in which the position of the parties as plaintiffs and defendants was different from their position in the instant case. For the purpose of clarity, the parties will be referred to hereinafter, when necessary, by their respective names and act by their party designations.

The petition in the equity case, which is the one before us for consideration, is of great length, and, with the omission of many of its statements of conclusions, alleges, in substance as follows:

That A. F. Oberhelman at all times mentioned was and is a Justice of the Peace within and for Clay Township, Lafayette County, Mis-

souri; Clelia Brooks is the party in whose favor a judgment was rendered against Harry Sanders in the court of said defendant Justice of the Peace; that said suit was presented on a statement of account for rent to Clelia Brooks in the amount of $60; that said statement was amended to set out further description of the premises involved, but contained no allegations of ownership, right, title, or possession of said premises; that on April 25, 1943, said justice case came on for hearing before defendant Justice of the Peace, at which Sanders presented a plea in abatement and in bar of said action in that the total of the claim and demand was already pending on appeal in a previous action; that the action before defendant Oberhelman constituted a multiplicity of suits before the same parties in the same cause of action, thereby being vexatious; that said pleading in bar was made also on the ground that said cause of action had previously been presented as a counterclaim in a previous action in a justice court between the same parties, had been considered by the court in said previous action, and was a component part of a judgment rendered therein, which previous cause was then pending on appeal in the circuit court of said county; that proof in support of said plea in abatement and in bar was offered by Sanders, uncontradicted by Clelia Brooks, nor was the jurisdiction of the prior court challenged; that nevertheless defendant Oberhelman refused to abate said action, or to declare the same barred by the former adjudication; that Sanders did thereupon file a motion to continue the hearing, stating to said justice that he had relied on the assumption that the cause would be abated, by reason whereof he had not come prepared to offer a complete defense; that said Oberhelman immediately overruled said motion and ordered the trial to proceed; that Sanders then filed motion before said justice to the effect that Clelia Brooks was not the proper party plaintiff, and that she had no cause of action against Sanders, and setting forth that if there were any cause of action that it would be a cause of action of Sydney Brooks, or the cause of action of Clelia Brooks and Sydney Brooks jointly, wherefore Sanders asked said justice that the service be quashed and the case dismissed, or that the court should add Sydney Brooks as an additional party coplaintiff, further setting out as reason therefor that the only agreement ever made for the use and occupancy of the premises involved was entered into with Sydney Brooks, who had represented himself to Sanders as the owner of said land, and that Sydney Brooks was the only one to whom Sanders ever made attornment, and the only one who ever appeared to exercise any authority or control over the premises; that said plea before the justice set out further that a contract with Sanders had been entered into with Sydney Brooks concerning said premises, and included the rent and use of other lands to which the aforesaid Sydney Brooks claimed ownership, as to which part of said contract Sydney Brooks had failed of perform-

ances by not putting Sanders in possession of said other lands; that said plea before said justice further stated that Sanders had a counterclaim against Sydney Brooks growing out of the same transaction, and that unless the latter be made party coplaintiff, the matters involved in the same transaction could not all be settled in one action.

That said plea in bar before the justice also averred that Clelia Brooks was not the owner of the premises for the rent of which the suit was brought, but that Sydney Brooks was the sole owner thereof.

That Sanders introduced in evidence before the justice, in support of said motion, a certified copy of a recorded warranty deed showing that Clelia Brooks had parted with title to said property fourteen years previously, whereby Sydney Brooks was and for thirteen years prior to the contract with him aforesaid, had been a record owner of said premises; that Clelia Brooks offered no evidence contradicting said evidence in support of the plea in abatement, but nevertheless Oberhelman refused to quash the service, to dismiss the action, or to make Sydney Brooks a party coplaintiff.

That in support of said plea and motion Sanders showed the justice that the claim and demand for rent had been previously presented in the prior action as a joint counterclaim by Clelia Brooks and Sydney Brooks, and Sanders urged before the justice that Clelia Brooks was estopped to plead a cause of action which was a joint one with Sydney Brooks and to sue thereon as a cause of action accruing to her alone; that as to said plea of estoppel Clelia Brooks offered no contradiction, but that nevertheless Oberhelman overruled the same and totally disregarded uncontradicted proof thereof.

That Harry Sanders, being thereupon forced to trial in said justice case, filed his answer, denying that he owed Clelia Brooks anything and denying every other allegation of her statement.

That Clelia Brooks was the first witness in said case before Oberhelman, the Justice of the Peace; that in the midst of her cross-examination by counsel for Sanders, Justice Oberhelman interrupted said counsel, declaring that he had heard enough, that he would not permit the cross-examination to continue further, and that he was then and there rendering judgment for Clelia Brooks; that said judgment was thereupon rendered, thus ''turning the defendant out of court altogether to the accompaniment of boisterous acclaims of the plaintiff and Sydney Brooks'', albeit that Sanders had a meritorious defense in any court where he would receive the benefit of due process of law.

That Sanders thereupon filed a motion with Justice Oberhelman, asking the court to declare a mistrial, ''affirm'' a discontinuance of the cause, and to make an entry suggesting the nullity of the judgment so that Sanders might more expeditiously have the same set aside in the Circuit Court, all of which Justice Oberhelman refused and failed to do. That Justice Oberhelman was without authority or jurisdiction to render judgment except after a hearing upon the merits in which

the defendant was given opportunity to present his defense and to cross-examine the witnesses, to have his day in court and upon denial thereof there was a lack of due process of law and deprivation of his rights under Section 30, Article II of the Constitution of Missouri, and the Fourteenth Amendment to the Constitution of the United States.

That Clelia Brooks was estopped *in pais* from maintaining such action for rent, even if the owner of said property, by her statements, acts, and conduct by which she allowed Sanders to assume she was not the owner and caused Sanders to change his position relative to the use and occupancy of said premises, as the result of which Sanders acted to his detriment, and is now thereby held liable to recompense her for nine months' use and occupancy of said premises, which he never had or enjoyed; that Sydney Brooks and Clelia Brooks took possession of the said premises for which twelve months' rent is claimed after three months' occupancy, thereby taking for themselves benefit of three months' labor of Sanders in producing several acres of garden truck; that Sydney Brooks and Clelia Brooks induced Sanders to come on the Brooks' farm as a laborer; that he resided thereon almost three months at the house of Clelia Brooks, and worked as a farm hand, she at no time in said period claiming any such rent as that for which the judgment complained of was rendered, whereas, meanwhile Clelia Brooks by her acts, statements and conduct caused Sanders to remain working there and to believe that there was no existing claim for rent for the premises upon which the rent judgment was obtained. That Clelia Brooks is therefore estopped *in pais* from making such rent claim, especially since the matter was already in litigation in a previous action.

That Sanders has no adequate remedy by appeal because he thereby would waive all irregularity in the justice court and the conduct of the justice in causing a mistrial, and would thereby waive his rights to have due process of law in said trial; that by appeal Sanders would have waived his right to additional party coplaintiff because upon appeal Sydney Brooks could not have been added and joined, nor could, upon such appeal, a complete determination of the matter have been had without such additional coplaintiff.

That plaintiff upon appeal could not have pleaded his equitable defense of estoppel *in pais*, for, not having been able to plead the same in the justice court, its availability in the circuit court would have been denied.

That the matters complained of, which would render the judgment of Justice Oberhelman void or voidable, are not apparent on the justice court record and can only be shown by a direct attack upon such judgment and by evidence *aliunde* the record; that the record shows nothing that would sustain a motion to quash the execution; that the evidence required to overthrow the judgment rests *in pais*; that the

plaintiff Sanders is directly assailing the verity of the judgment itself, which was to the effect that said cause was submitted for trial and the court having heard all the evidence and arguments of parties found for the plaintiff and against the defendant in the sum of $60; that such entry is a falsification of the record; that plaintiff was prevented and precluded from offering any evidence under his answer, prevented from offering any argument whatsoever; that there was no trial on the merits; that the judgment is fraudulent in its essence; a judicial act but a mere nullity, unconscienable, unjust and a constructive fraud practiced on plaintiff, susceptible of equitable intervention.

That the judgment of the justice was concocted and procured in fraud; that the justice had been told to render judgment against Sanders regardless of the issues before him, and to let the matter be determined upon its merit on appeal.

That by such inducement Oberhelman, after the filing and hearing of each motion, did declare that he intended to give judgment to Clelia Brooks, that she was entitled to judgment, and that he was in a hurry and wanted to get the matter over with, all of which took place before the case came to trial on answer, and before any evidence to sustain an action had been introduced, and before Justice Oberhelman abruptly terminated the trial, thereby turning Sanders out of court in the midst of defendant's cross-examination of the first witness.

That had Sanders been permitted to present his defense he would have shown that for the twelve months' period for which the rent judgment was rendered, the tenancy was entered into only on a month to month basis at a rental of $5 per month, and to have continued no longer than the 1942 gardening season; that Sanders occupied the premises only three months, for which he paid rent in labor as per his agreement with Sydney Brooks; that thereafter under circumstances not under his control, he was compelled to leave the premises, whereupon either Clelia Brooks or Sydney Brooks, or both of them, took possession of the premises, took his garden truck and disposed of the same to their profit without making an accounting therefor to the plaintiff.

That three months thereafter Sanders was induced to return to said farm by Sydney Brooks to work as a farm laborer thereon; was by Sydney Brooks installed in the house of Clelia Brooks, and at direction of Sydney Brooks did work all over said farm, being directed therein by both Sydney Brooks and Clelia Brooks; that after twelve weeks' work thereon he was discharged and turned off the Brooks' place by Sydney Brooks without being paid any compensation for his work; that Sydney Brooks and Clelia Brooks refused to permit him to remove from said farm certain hogs, which he owned and had thereon.

That Sanders had never heard either Clelia Brooks or Sydney Brooks make claim for rent upon the premises for which the judgment was rendered until after Sanders brought a replevin suit in a former justice case for the hogs aforesaid, at the trial of which Clelia Brooks and Sydney Brooks set up a counterclaim for the rent alleged to be due aforesaid.

That if Sanders had been permitted to introduce his defense before Justice Oberhelman, he would have shown that both Sydney and Clelia Brooks had by their admissions disavowed any such rent.

That the suit by Clelia Brooks alone was vexatious and grounded in conspiracy and fraud against Sanders and created a multiplicity of suits.

That said judgment was at least prematurely rendered and should be set aside upon the allegations showing a meritorious defense.

The court is asked to issue an injunction perpetually enjoining Clelia Brooks and Justice A. F. Oberhelman from enforcing or collecting, or attempting to enforce or collect said judgment, or any part thereof, by execution or in any other manner, and for costs.

Our first consideration is directed to a motion to dismiss this appeal. The motion is based on a claimed violation of our Rule 17, which requires the brief of appellant to set forth separately and distinctly the errors of the lower court complained of. In lieu of an assignment of errors in the usual form, appellant labels his presentation of errors as "The Issues on Appeal", under which, in parentheses, appear the words "Erroneous conclusions of law in lower court". Thereafter is set forth, in numerous paragraphs without number or designation, and in a narrative style, a statement of the disposition by the Circuit Court of the various points argued therein on the demurrer; he also sets forth the reasoning and suggestions of that court on the matter, none of which, of course, appears in the abstract of the demurrer and the judgment thereon. Appellant's points and authorities, ten in number, are mere statements of abstract principles of law and equity, not specifically connected on their face with the alleged error of the court in sustaining the demurrer, except his last point that the allegations of fraud were sufficient to state a cause of action.

While it appears that no effort was made to conform with our Rule 17, and that the manner adopted adds to the difficulty of a reviewing court to determine what errors are complained of and which are reviewable on appeal, the fact remains that it can be gathered from the "issues on appeal" and from the "points of authority" that the real and only point before us is the alleged error of the trial court in sustaining the demurrer to the petition on the ground that it did not state a cause of action, which requires our consideration of it. If a petition does not state a cause of action there is no case, and it is the duty of the court, even of its own motion, to take notice of the fact, if true, that the petition does not state a cause of action. Therefore,

the inartificial manner of calling such error, if made below, to the attention of the appellate court, would not relieve the appellate court from the responsibility of considering the same. The motion to dismiss the appeal is overruled.

As far as all proper legal defenses pleaded in the equity petition are concerned it is evident that they could all have been availed of by the plaintiff in an appeal from the justice judgment. The pendency of another action between the same parties in the same cause; any former adjudication of the same claim; the matter of the proper parties; matters pertaining to the merits; and other legal defenses could all have been presented and considered in a trial *de novo* in the circuit court on appeal from the justice judgment (Section 2738, R. S. Mo. 1939).

Plaintiff's allegations of fraud are not sufficient to constitute grounds to avoid the judgment, as a fraud charged must go to the very procurement of the judgment. [Cantwell v. Johnson, 236 Mo. 575, l. c. 601, 139 S. W. 365; Peeters v. Schultz, 300 Mo. 324, l. c. 338, 254 S. W. 182.] The allegation that the respondent justice "had been told to render judgment against defendant Sanders regardless of the issues before him and to let the matter be determined upon the merits on appeal", in no way charges the plaintiff with fraud in the procurement of the judgment, and even if the charge be true, a trial *de novo* in the circuit court on appeal would have afforded an adequate remedy therefor.

But plaintiff also pleads a course of conduct on the part of Clelia Brooks which he designates as estoppel *in pais*, and which conduct, if proved, would be an equitable defense to the justice action. It is true, as plaintiff alleged, that the equitable defense pleaded could not have been heard by the justice of the peace (Sec. 2554, R. S. Mo. 1939), nor by the circuit court on appeal therefrom; the jurisdiction of the latter being derivitive. Nor are the irregularities as alleged sufficient to render the justice judgment void, nor to deprive the plantiff of due process of law. The justice undeniably had jurisdiction over the person and of the subject-matter, and defendant filed his general denial therein and proceeded to trial.

The question remains whether plaintiff's allegation of an equitable defense, which he claims would have been applicable to the suit against him in the justice court, but unavailable there because of the limited jurisdiction of the justice, is sufficient to enjoin the enforcement of the judgment against him in the justice court. It is well established that relief may be had by a separate suit in equity where, in a pending suit in a justice court the defendant therein has an equitable defense thereto, but cannot avail himself thereof because of the statutory prohibition against the entertainment of an equitable proceeding by a Justice of the Peace. In such cases the proper remedy is to file a separate suit in equity, setting forth the alleged equitable defense to

the pending action and have the proceedings below stayed until the legal rights of the plaintiff and the equitable rights of the defendant in the justice case may be determined in the court of equity.

As said by the Supreme Court in Morris v. Davis, 334 Mo. 411, l. c. 422, 66 S. W. (2d) 883:

"Equitable defenses may not be made in unlawful detainer cases which are cognizable in the first instance only before justices of the peace. Therefore a defendant in such a case who relies and depends upon equitable defenses must bring an original suit before a chancellor. In that suit, upon proper pleadings, there may be made a determination of whatever legal rights the plaintiff in the unlawful detainer action may assert and of whatever equitable rights the defendant in that action may set up, with injunctive relief against the further prosecution of the unlawful detainer action pending the final disposition of the suit in equity."

That court cites the early case of Ridgley v. Stillwell, 28 Mo. 400, which was an action instituted in the court of a Justice of the Peace for the possession of land, and wherein the defendant relied upon an equitable defense growing out of the conduct of the parties under an oral agreement, and in respect thereto, the court said, l. c. 404:

"This proceeding was for an unlawful detainer, which was necessarily commenced before a justice of the peace, who had no power to inquire and decide whether the contract ought to be enforced and to give the equitable relief the defendant sought. If the defendant was entitled to have the parol agreement executed, his course was to have enjoined, in a court of competent jurisdiction, the proceedings before the justice until his equity could be determined."

Such rule has been reiterated by the courts of this State on various occasions since the above decisions.

Likewise it was said in State ex rel. Jackley v. Taylor and Hartmann, 210 Mo. App. 195, l. c. 200:

"In actions of unlawful detainer, which must be instituted before a Justice of the Peace, it has been repeatedly held by this court, and our Supreme Court as well, that the justice has no right or authority to inquire into equitable matters presented to defeat the action, and which, if sustained, would give the defendant relief, but that defendant's remedy is by a bill in equity to restrain the prosecution of the unlawful detainer suit and grant the defendant the relief to which the equitable matters set up in his answer would entitle him."

The record in this case does not disclose the date the original petition was filed. Appellant's brief states that it was filed within eight days after the judgment was rendered. The record does disclose, however, that it was filed after the judgment in the justice court was rendered. It also discloses that the amended petition in question was filed July 7, 1943. The amended petition reveals that no appeal had been taken, and that appellant herein had elected to take no such appeal; in fact,

he pleads various reasons why he claims an appeal would not afford an adequate remedy. Thus it is evident on the face of his petition that upon the expiration of the appeal period, the judgment in the justice court would or had become final and the issues therein *res judicata*. The mere filing of the equity suit would not and did not toll the appeal period, even though appellant did not wish to avail himself of an appeal.

But appellant mistakes the applicability of the equitable remedy in question to proceedings in an inferior court already in judgment. It is not intended that thereby a judgment of a Justice of the Peace may be reopened at the instance of the judgment debtor to afford him a hearing on an alleged equitable defense to the case. In the early case of Montgomery v. Farley, 5 Mo. 233, the court said:

"The records of a judgment offered in evidence in another suit cannot be invalidated by parol testimony, or matter *in pais*."

The purpose of the remedy is to afford to a party a proper proceeding and a tribunal wherein, before judgment, the equitable defense to the case below might be determined. To await an unfavorable judgment in the justice court and then to reopen the same through an equity suit of the kind in question would tend to instability of the judgments of courts, and to endless litigation. Courts are reluctant in separate proceedings to disturb previous judgments in the absence of fraud, accident, surprise, mistake, or want of jurisdiction.

In the case of Cantwell v. Johnson, *supra*, l. c. 600, the court says:

"But the courts have a wise and natural aversion to overthrowing judgments. There must be an end to litigation in the interest of the State and for the repose of society; therefore when the help of a court of equity is asked to undo what has already been done and adjudged by a court, fraud in the cause of action itself, in false allegations or false testimony, will not suffice. . . . So, where fraud, accident, surprise or mistake is the ground for equitable relief against a judgment, plaintiff must come into court with a cause unmixed with his own negligence or fault; for "no man is entitled to the aid of a court of equity, when that aid becomes necessary by his own fault.' "

Such principle applies whether the grounds be fraud and mistake or the desire to avail oneself of an equitable defense to a cause already reduced to judgment. The plaintiff here elected not to avail himself of his right of appeal from the judgment of the Justice of the Peace, and to rely on his subsequent suit in equity for a determination of his alleged equitable defense to the cause below already in judgment. This relief, we believe, is not now available to the plaintiff under the allegations of his petition.

From the above we conclude that appellant's petition in equity did not state facts sufficient to constitute a cause of action, and that the trial court was correct in sustaining the demurrer to the same on said ground. The judgment of the trial court is affirmed. All concur.