Fred A. HENZE, and Julius A. Sinnwell, Plaintiffs–Appellants,

v.

SHELL OIL COMPANY, Defendant–Respondent.

No. 53859.

Missouri Court of Appeals, Eastern District, Division Three.

July 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1988.

Application to Transfer Denied Oct. 18, 1988.

**94**

Harold P. Heitmann, Ellisville, for plaintiffs-appellants.

Coburn, Croft & Putzell, Vincent H. Venker, F. Brett Oberheide, St. Louis, for defendant-respondent.

KAROHL, Presiding Judge.

Plaintiffs filed an unlawful detainer action under the first subdivision of Section 534.030 RSMo 1986. They did so in their capacity as owners and as landlord under a lease agreement. They alleged that defendant Shell, as tenant, willfully, and without force held possession of real estate after termination of the time for which the premises were let. These allegations stated a cause of action under the first subdivision of the statute which does not require allegations or proof of demand. The cause was tried on stipulated facts. The trial was a de novo hearing requested by defendant after a prior judgment in favor of plaintiffs rendered by an Associate Circuit Judge. The trial court entered judgment in favor of defendant by dismissing plaintiffs' unlawful detainer action. The court also entered an order for "counter defendant" which directed plaintiffs "to specifically perform under paragraph No. 9 of defendant's exhibit "A" [the lease] and to convey property in question ... [to Shell]." Plaintiffs appeal both parts of the judgment.

The attempt to order specific performance in the unlawful detainer action must be reversed. First, the scope of Chapter 534 relating to forceable entry and unlawful detainer is narrow. The merits of title "shall in no wise be inquired into, on any complaint which shall be exhibited by virtue of the provisions of this chapter." Section 534.210 RSMo 1986. Second, defendant's attempted counterclaim for specific performance was dismissed by the court before trial. Defendant's claim to equitable relief in the form of specific performance or injunction was not before the court. After the counterclaim was dismissed defendant Shell Oil Company filed a separate suit requesting specific performance relief to enforce option to purchase provisions of the lease. That suit was pending at the time of the present judgment. It is based on a claim by Shell that it exercised an option to purchase the premises granted in the lease. The limited scope of the statutory proceeding for un-

lawful detainer requires the separate suit. *Morris v. Davis,* 334 Mo. 411, 66 S.W.2d 883, 889 (1933); *Sanders v. Brooks,* 238 Mo.App. 485, 183 S.W.2d 353, 358–359 (1944). These cases also teach that the appropriate forum to enjoin or stay the unlawful detainer proceeding is in the separate equitable suit. The record does not disclose whether such relief was requested. That part of the judgment which purports to order specific performance is reversed.

■ Before we address the merits we interpret the form of the judgment dismissing plaintiffs' complaint to be a judgment on the merits. It represents a finding that upon the facts and the law plaintiffs have shown no right to relief. Section 510.140 RSMo 1986. This conclusion is supported by the record which shows that defendant's pretrial motion to dismiss the complaint was overruled. The grounds of the pretrial motion were: 1) lack of subject matter jurisdiction; and, 2) failure to state a cause of action. Under the circumstances the judgment dismissing the complaint must be the result of a finding that plaintiffs, on the basis of stipulated facts, failed to sustain their burden of proof that defendant was guilty of an unlawful detainer as that term is defined for the first subdivision of Section 534.030 RSMo 1986. For the same reason the judgment does not reach a question of whether plaintiffs are entitled to rent or damages during a holdover period.

"The sole issue in an unlawful detainer action is the immediate right of possession. ... It is generally held that counterclaims are also prohibited in unlawful detainer proceedings, regardless of the subject matter, unless permitted by statute. ... Missouri statutes do not so permit." *Leve v. Delph,* 710 S.W.2d 389, 391 (Mo.App.1986). In deciding this issue evidence of title has been permitted in an unlawful detainer action for the limited purpose of determining who is entitled to possession. *F.A. Sander Real Estate & Inv. Co. v. Warner,* 205 S.W.2d 283, 288 (Mo.App.1947).

We review a court tried case on stipulated facts. We are guided by Rule 73.01(c)(1) and review both the law and the evidence as in suits of an equitable nature. Because the facts are stipulated no deference regarding credibility of witnesses is required by Rule 73.01(c)(2). The operative facts under this standard of review and the unlawful detainer statute are as follows.

Plaintiffs occupy the position of owners and lessors of 611 Gravois, Fenton, St. Louis County, Missouri. They entered into a fifteen year lease of the premises to defendant Shell. The initial term began on March 23, 1961. The lease granted Shell options to extend the lease for two additional five year terms. If Shell failed to "exercise its then-current option to extend, the term [was] automatically extended from year to year, on the same covenants and conditions as herein provided, unless and until either Lessor or Shell [terminated the] lease at the end of the original term or the then-current extension period or any subsequent year, by giving the other at least thirty (30) day's notice." Both five year options were duly exercised by Shell, thereby extending the lease until March 31, 1986. On March 10, 1986, an agent of Shell notified both plaintiffs by letters that it was exercising the Purchase Option in Article 9 of the lease, "to purchase the premises for $65,000 on the terms, provided in Article 11."

Article 11 of the lease required lessor, within twenty days after notice of exercise of any purchase option, to obtain at their expense and submit evidence of title for examination by Shell. Shell's letters exercising the option designated a title company as escrow agent for the transaction. Shell requested lessors to deposit with the escrow agent the warranty deed together with evidence of title.

On March 28, 1986, counsel for lessors advised Shell that lessors were under no legal obligation to sell the property pursuant to the claimed option. On April 22, 1986, counsel for lessors advised Shell by letter that the option provided for in the lease violated the rule against perpetuities on the authority of Restatement of Property, Section 395 comment b and Simes and Smith, Future Interests (2d Ed.), Section 1244, p. 162. The lease was executed on a form provided by Shell. According to the

provisions of the lease Shell's tenancy could extend on a year to year tenancy for an unspecified and indefinite number of years. That was permitted if Shell failed to exercise extension options. The option to purchase was viable any time during the original term or any extension thereof "or any tenancy thereafter." Accordingly, lessors determined that the purchase option was void and unenforceable because the original lease did not provide for the title to vest within the appropriate time period. The stipulated facts recite that the lease contains certain provisions regarding tenancy, a purchase option, holdover tenancies and the nature, duration and transfer thereof. However, "[t]he parties disagree as to the effect of such provisions on the right to possession of the premises after March 31, 1986." The stipulation contains a provision that Shell was "ready, willing and able to purchase the property." The validity of the option is one of the issues to be decided in the equitable suit filed by Shell.

During the dispute Shell tendered rent payments for the month of April, 1986. The rent payments under the lease were $385.19 per month. The check was returned. It also tendered payment for the month of May, 1986. It too was returned. Because of the refusal of plaintiff to accept payments Shell made no further tenders, but placed [rent] monies in escrow until the present time. The parties agreed that the fair market rental value of the property for the period April 1, 1986 to the date of submission of the stipulation was $2500 per month.

It was stipulated that plaintiffs gave no written notice to Shell objecting to a holdover. Under the first subdivision of Section 534.030 no notice to quit is required. Plaintiff Fred A. Henze "testifies he gave such notice orally to defendant." Defendant offered, over plaintiff's objection, documents relating to exercise of the option of purchase and plaintiffs' responses. The objection was that these documents were not relevant or material to any issues in the unlawful detainer action. Except for the effect of these documents, "there is no evidence the plaintiffs consented to Shell holding over after March 31, 1986." The parties agreed the court could rule on the admissibility of the exhibits and decide the case upon the stipulation and exhibits determined by the court to be admissible.

On appeal plaintiffs claim the court erred in dismissing the complaint because the affidavit and complaint in unlawful detainer stated a cause of action. We have disposed of this issue by finding that the dismissal was on the merits. The pretrial ruling determined the complaint stated a cause of action.

Plaintiffs also claim the court erred in granting an order of specific performance. We have disposed of this issue by reversing that order as being unauthorized and not being properly before the court.

■ Plaintiffs also claim the court erred if it found notice of termination of tenancy was required. Where the relationship of the parties was that of landlord and tenant and the term of tenancy has expired according to the agreement of the parties no notice is required. Section 534.030 RSMo 1986, First Subdivision; Section 441.070 RSMo 1986; *Cook v. Cureatz*, 466 S.W.2d 133, 135 (Mo.App.1971). Shell responds that these authorities are not controlling because it exercised its option to purchase on March 10, 1986 under the provisions of the lease which changed the relationship of the parties from that of landlord-tenant to that of vendor-vendee. *See*, 51C CJS Landlord and Tenant, Section 81(5), p. 241; Section 82(1), p. 247 and footnote cases. We are not persuaded by the response. However, the issue is not decisive. The judgment denying relief does not depend on a finding that notice was required, but not given. We assume the trial court was aware of the provisions of Sections 441.070 and 534.030 RSMo 1986 and honored them.

Shell relies on *Gulf Oil Corp. v. Ferguson*, 509 S.W.2d 1 (Mo.1974); *Wilson v. Edwards*, 560 S.W.2d 608, 612 (Mo.App. 1978). These cases stand for the proposition that when a tenant exercises a lease option to purchase, a bilateral contract for the sale of the premises is created and is specifically enforceable. However, this

finding does not exclude a continuance of the landlord tenant relationship for some purposes because of the additional rights and obligations owed and enjoyed by the parties as vendor-vendee. This is especially true where the option is conditional. Although Shell exercised the option to purchase under the provisions of the lease it was not irrevocably obligated to close on the purchase because of the exercise of the option to purchase. The lease also provided "[i]f title is not approved by Shell's attorneys or all such legal permission is not in effect, the sale shall be consummated *or rejected* at Shell's option; ..." [Our emphasis]. Closing was, by the terms of the lease, conditional upon satisfying Shell that plaintiffs had good title, or its equivalent, and "such legal permission." Further, Shell's obligation to continue to pay rent was not expressly terminated by any provisions in the lease after the exercise of the option to purchase and before closing. It continued to tender rent payments after the lease terms expired. *See, White v. Coates*, 17 Wash.2d 686, 137 P.2d 113, 116–117 (1943). The terms of the lease do not exclude continuation of the relationship of landlord and tenant until a sale was completed on the right of landlord to continue to receive rent. More on point, the requirement that the relationship of landlord-tenant exists under Section 534.030 RSMo 1986, First Subdivision, was and remained satisfied. *See, McIlvain v. Kavorinos*, 212 S.W.2d 85, 88 (Mo.App.1948). According to the stipulated facts the parties were landlord and tenant under the provisions of the lease. The stipulation satisfied the requirement that plaintiffs establish that relationship. *Rust v. Dames*, 142 S.W.2d 797, 799 (Mo.App.1940). *Gulf Oil Corp.* and *Wilson* were specific performance, not unlawful detainer actions, and the holdings do not exclude a continuation of the relationship of landlord and tenant for purposes of an unlawful detainer claim.

Shell also relies on *Vatterott v. Kay*, 672 S.W.2d 733 (Mo.App.1984). We there reversed a judgment for sellers under a land sales contract and held that sellers were not entitled to maintain an unlawful detainer action against the buyers. Before closing under the contract sellers permitted the buyers to take possession of the property. When the closing failed because of default on the part of seller, sellers filed an unlawful detainer to remove the buyers and for damages. We held under the circumstances, including possession by buyer with the sellers consent, and a buyer ready, willing and able to close, unlawful detainer was not appropriate to settle the dispute. Before the unlawful detainer action was tried in a de novo trial in the circuit court, the buyers filed a suit for specific performance. The unlawful detainer action was held in abeyance. The buyers prevailed in the specific performance action. We found that during the de novo trial of the unlawful detainer action the court should have considered the decree of specific performance because it constituted evidence of the nature of buyers possession of the property. In *Vatterott*, the specific performance trial occurred before the unlawful detainer de novo hearing. The buyer in *Vatterott*, was entitled to rely upon the specific performance decree when the unlawful detainer issue of possession was tried. Shell is not in that position. *Vatterott* did not decide that the exercise of the option to purchase terminated the landlord tenancy relationship so as to disqualify plaintiffs from consideration of its affidavit and complaint in unlawful detainer. Further, in *Vatterott*, the parties were never related as landlord and tenant. The creation of the vendor-vendee relationship, assuming without deciding the purchase option was valid, did not terminate the landlord-tenant relationship for purposes of an unlawful detainer suit.

■ Plaintiffs also contend the trial court erred in not finding that the term of the lease had expired and no further tenancy was provided by the language of the lease. Shell claims that it is entitled to retain possession as a buyer or vendee-in-possession pursuant to a bilateral option contract for the sale of land. Shell relies on *Ragsdale v. Phelps*, 90 Mo. 346, 2 S.W. 300 (Mo.1886). On this issue it also relies on *Vatterott v. Kay, supra*, which cites *Ragsdale* with approval. The facts in *Ragsdale* are similar to the facts in *Vatter-*

*ott.* Both were suits for unlawful detainer filed by vendors against vendees in possession with permission of vendor before closing. For some reason, not clearly disclosed in *Ragsdale*, the vendor was unable to obtain clear title to complete the sale. The buyer then went to the owner, a Railroad Company, and directly purchased the property. At the time the unlawful detainer was tried the purchaser was in possession under both the consent of the seller and title acquired by a deed from a third party. The court declined to define with any particularity the technical legal relations which subsisted between the parties. It acknowledged that a purchaser in possession with the permission of the seller under an executory contract of purchase who has defaulted on contract may not hold on to possession. However, it was the plaintiff, as a seller, who broke or repudiated the contract. It was the purchaser who offered to pay the purchase money and demanded a deed. This was a compliance with the requirements of the contract, "[and] gave them a clear right to a conveyance, as they had a right to retain the possession, and insist on the execution of the contract. The vendee can defend, and protect his possession, by showing a performance on his part, and that he is not in default." *Ragsdale*, 2 S.W. at 301. The court approved the conduct of the purchaser to "lawfully protect and fortify their possession and improvements, if any, in the mode they did." *Id.* Significantly, the court recognized that plaintiff-vendor may have remedies in other proceedings at law or in equity in which, whatever rights, if any, the plaintiff may have in respect of these lands, may be made to fully appear, and be enforced; but, manifestly, this "[unlawful detainer] is not the appropriate proceeding for that purpose." *Vatterott* reached the same conclusion.

The holdings in *Ragsdale* and *Vatterott* support the judgment of the trial court. They are authoritative for reasons that are independent of the prior or continuing relationship of landlord-tenant and of the absence of any requirement of a notice to quit. In both cases defendant occupied the premises as a purchaser under an executory land contract but with the permission of the seller. In both it was the seller, not the purchaser, who was unable or refused to close. In the present case Shell occupied the premises with the permission of plaintiffs under an exercised option in a lease. Although the relationship of the parties may have continued for some purposes as that of landlord and tenant, the common fact is that a purchaser, either under a land contract or under the exercised lease option, was in peaceful possession and ready, willing and able to close under a written agreement to buy. The decisions of these cases do not depend upon the fact that a landlord-tenant relationship terminated in favor of a vendor-vendee relationship. It may for some purposes continue. However, the termination of the term of the lease, under the circumstances of the exercise of the option to purchase, together with an unqualified willingness of the tenant, as vendee, to complete the purchase under the option, justifies continued possession and supports the judgment of the trial court in denying relief and dismissing the petition for unlawful detainer.

■ Finally, plaintiffs contend that the court erred in considering any evidence of the purported option or its exercise because it is only relevant as an inquiry into the merits of title prohibited by the unlawful detainer statute and is further barred as constituting an equitable claim. What we have said rejects this argument. The evidence of the exercise of the option, like evidence of a executory land contract, is probative on the issue of right to immediate possession which is the only issue in an unlawful detainer action. Nor does it constitute prohibited evidence of an equitable claim. It is probative on the proper and sole issue on an unlawful detainer action. *Ragsdale* and *Vatterott* so determined.

We find that the court properly found that plaintiffs were not entitled to immediate possession of the premises. By dismissing the complaint for that reason the court did not necessarily reach or decide the legal validity of the option provisions of the lease, or plaintiffs' rights to rent or damages until a closing under the option to purchase, or a failure of closing, by decision of Shell not to close under the provisions of the lease. As noted in *Ragsdale*,

the limited scope of unlawful detainer does not deny plaintiff a consideration of remedies in other proceedings at law or in equity in which, "whatever rights, if any, plaintiff may have in respect of these lands, may be made to fully appear, and be enforced."

We affirm the judgment denying plaintiffs relief under the unlawful detainer statute. The judgment is limited by the scope of the unlawful detainer statute and decided only that plaintiffs are not entitled to immediate possession under the circumstances. *McNeill v. McNeill*, 456 S.W.2d 800, 807 (Mo.App.1970) ["... any rights conferred upon plaintiffs or lost by defendants by reason of this action are wholly possessory."] We reverse that part of the judgment which purports to order plaintiff to specifically perform the option to purchase provisions of the lease. The merits of the equitable suit, including lessor's right to rents and damages, remain for a determination in the equitable suit, according to the issues pleaded or to be pleaded in that case, when tried. The costs of this appeal are to be assessed one half against appellants and one half against respondent.

SMITH and KELLY, JJ., concur.