Stacy Skiles **MINZE**, Respondent,

v.

**MISSOURI DEPARTMENT OF PUBLIC SAFETY, et al., Appellant.**

**No. WD 76119.**

Missouri Court of Appeals, Western District.

April 8, 2014.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 2014.

Application for Transfer Denied Aug. 19, 2014.

W. Christopher McDonough, Chesterfield, MO, for respondent.

P. Benjamin Cox, Kansas City, MO, for appellant.

Before DIV II: GARY D. WITT, Presiding Judge, LISA WHITE HARDWICK, Judge and ALOK AHUJA, Judge.

GARY D. WITT, Judge.

## INTRODUCTION

The Missouri Department of Public Safety ("MDPS") appeals from the circuit court's judgment entered upon a jury verdict in favor of the plaintiff, Stacy Minze ("Minze"). MDPS contends the circuit court erred in submitting the verdict directing instruction because it resulted in a roving commission and erred in the exclusion of certain impeachment evidence. For reasons explained herein, we reverse and remand on Point I and determine that our ruling on that point makes a ruling on Point II moot.

## FACTS AND PROCEDURAL HISTORY [1]

In 1997, Minze began work as a police officer for the MDPS and was assigned to the Capitol Police Department ("Capitol Police") in Jefferson City. The Capitol Police falls under the authority of MDPS. In 1998, Minze was promoted to sergeant. At some point, Minze was put in charge of the canine officer for the department.[2] In 2006, the Chief of the Capitol Police, Todd Hurt ("Hurt") promoted her to lieutenant.[3] At the meeting in which Minze was promoted, Hurt outlined areas in which he believed Minze needed to improve. Minze later characterized the meeting as "two and a half hours of Chief Hurt telling me that I was a horrible employee." A personality conflict resulted between Minze and Hurt. Shortly thereafter, Minze complained of sex discrimination to the Human Resources director for the Capitol Police, Mary Beckwith ("Beckwith"). Minze, however, filed neither a grievance with the department nor a complaint with the Missouri Commission on Human Rights ("MCHR") at that time.

In March, 2007, Minze received an on-the-job injury that required surgery. On August 2, 2007, Minze requested a light duty assignment to begin when she returned from her first back surgery, which was to take place on August 31, 2007. Hurt granted her request, however, he

---

1. We view the facts in the light most favorable to the jury's verdict. *Mengwasser v. Anthony Kempker Trucking, Inc.,* 312 S.W.3d 368, 370, n. 1 (Mo.App.W.D.2010) (citation omitted).

2. The canine officer is the dog, not another human officer.

3. MDPS, Capitol Police and Hurt are all separate defendants. For ease of reference we will refer to them collectively as "the State."

notified Minze that she would not be allowed to take extra-strength Vicodin[4] while at work nor be allowed to train the canine officer on a daily basis while on light duty. Minze felt that it was unfair that she was not allowed to do these things. She was also required to produce doctor's notes to support her sick leave absences.

On August 22, 2007, Minze filed an official grievance against Hurt with the department. Thereafter, Minze met several times with various members of the MDPS. Ultimately no disciplinary action was taken against Hurt.

On January 11, 2008, Minze's physician completed a statement in support of Minze's application for long-term disability. Minze gave a copy to Capitol Police. The physician's statement certified that Minze was unable to return to work until March 1, 2008. Minze then submitted an "Injury/Illness Status Report" to Capitol Police, also dated January 11, 2008, that stated that she was unable to return to work until March 1, 2008 and not until seen by a physician. On January 15, 2008, Minze told Beckwith that she would be applying for long-term disability. On January 16, 2008, Minze emailed Hurt and requested a second light duty assignment when she returned from her second back surgery. Hurt replied "I cannot offer a light duty assignment based on the documentation that I have nor can I speculate on any future requests."

On January 25, 2008, Minze submitted her application for long-term disability. On February 20, 2008, her application was granted. Minze received a letter dated March 4, 2008, informing her that, due to her application for long-term disability benefits and the subsequent approval of

that application, she was deemed to have resigned from her job in accordance with state regulations. Under the regulations in effect at that time, an employee who was deemed to have resigned based on the grant of long-term disability was authorized to re-apply for the position that he or she vacated by that "resignation" and if rehired for that position, the person was allowed to keep their rank and years of service. Less than ten days after Minze's "resignation," the state regulations were amended to reflect that if a person applied for a position he or she formerly held and was rehired following the long-term disability, he or she must be hired as a new employee subject to a probationary period and a loss of prior rank.

Minze filed a complaint with the MCHR on March 14, 2008, alleging discrimination based on sex, disability and retaliation. On March 30, 2009, the MCHR issued a "right to sue" letter. On June 22, 2009, Minze filed a petition in the Circuit Court of Cole County alleging four counts: unlawful discrimination based on sex, retaliation, negligent supervision and negligent training.

A jury trial took place in which two counts were submitted to the jury. The jury found for MDPS on the claim of sex discrimination, but found for Minze on her claim of retaliation. The jury awarded her $70,000 in actual damages and $70,000 in punitive damages. Pursuant to statute, the trial court determined that her reasonable attorney fees and costs totaled $360,113.42. The State timely appealed.

## ANALYSIS

In its first point, the State argues that the trial court erred in overruling the

---

4. Vicodin is a brand of the prescription narcotic, hydrocodone, which is an opiate prescribed for acute, severe pain.

State's objection to the verdict directing jury instruction which submitted the claim for retaliation because the instruction failed to set forth specific acts constituting retaliation, which resulted in a "roving commission" and allowed the jury to consider actionable and non-actionable behavior in the aggregate. In its second point, the State alleges that the trial court erred in excluding impeachment evidence against Minze regarding her application for disability and workers' compensation claim in that, in both, she alleged that she was totally disabled and unable to work, evidence of which was directly relevant to the claim being litigated.

## POINT I

In its first point, the State argues that the trial court erred in overruling its objections to the retaliation verdict directing instruction Minze offered because it did not specifically identify any alleged acts of retaliation, which gave the jury a "roving commission" to consider actionable and non-actionable behavior in the aggregate. We agree.

### Standard of Review

■ "Whether a jury was instructed properly is a question of law that this Court reviews *de novo*." *Klotz v. Anthony's Med. Ctr.*, 311 S.W.3d 752, 767 (Mo. banc 2010) (internal citations omitted). We reverse only if we determine that there was error which resulted in prejudice, Rule 70.02(c), and "materially affect[ed] the merits of the action." Rule 84.13(b).[5]

In her petition, Minze alleged five separate counts but submitted only counts One and Two to the jury. The first count alleged "unlawful discrimination based on sex." The second count alleged "MHRA–Retaliation." Both counts referred to sections "213.010 *et seq.*" as the basis for Minze's claims.[6]

### Discussion

■ The proper form of M.A.I. jury instruction to submit Minze's claim of retaliation is disputed by the parties. Both parties submitted proposed instructions which appear to be based on MAI 38.01(A).[7] The only significant difference between the two instructions proffered by the parties was the description of the employer's behavior following Minze's complaint of sex discrimination. Minze described the employer's behavior as "adverse action," alleging that a "causal relationship existed between the complaint[8] and the adverse action." The State's proposed instruction required the jury to find that Minze "was terminated or denied light duty" and that "a causal relationship existed between the complaint and the termination or denial of light duty."

■ "To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove that: (1)[s]he complained of discrimination; (2) the employer took adverse action against [her]; and (3) a causal relationship existed between the complaint and the adverse action." *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo.App.W.D.2011) (citation omitted). A retaliation claim is not conditioned

---

5. All rule references are to Missouri Supreme Court Rules 2013 unless otherwise indicated.

6. All statutory references are to RSMo 2000 cumulative as currently supplemented unless otherwise indicated.

7. MAI 38.01(A) was previously numbered MAI 31.24.

8. As used, this referred to her "complaint" of gender discrimination.

on the success of the underlying discrimination or harassment claim. *Id.* Thus, it is irrelevant to a claim of retaliation that the act complained of was not legally actionable. The only issue is whether the person making the complaint had a reasonable good faith belief that there were grounds for the claim of discrimination or harassment. *Id.* at 754.

Minze submitted the following instruction regarding her claim of retaliation, which was adopted by the trial court and submitted to the jury:

> Your verdict must be for the Plaintiff and against Defendant MMDPS if you believe:
>
> First, Plaintiff complained of employment discrimination based on sex; and
>
> Second, Defendant MMDPS *took adverse action against her;* and Third, a causal relationship existed between the complaint and the *adverse action;* and
>
> Fourth, as a direct result of such conduct, Plaintiff sustained damage.

(Emphasis added.)

The State alternatively submitted the following proposed instruction on this claim, which was rejected by the trial court:

> Your verdict must be for the Defendant MMDPS on plaintiff's claim of retaliation, unless you believe:

> (1) Plaintiff complained of employment discrimination based on sex; and
>
> (2) Plaintiff *was terminated or denied light duty;* and
>
> (3) a causal relationship existed between the complaint and the *termination or denial of light duty;* and
>
> (4) As a direct result of such conduct, plaintiff sustained damage.

MAI 38.01 (modified); *McCrainey v. Kansas City Sch. Dist.,* 337 S.W.3d 746, 752 (Mo.App.W.D.2011); Submitted by Defendants. (Emphasis added.)

 Minze argued to the court that her proposed instruction "track[ed] the statutory language of section 213.055." [9] Minze further argued that she should not be limited to identifying specific actions that the employer took against Minze. Thus, her proposed instruction broadly identified "adverse action." The State objected to Minze's proposed instruction arguing that without identifying specific acts, it would give the jury a "roving commission" to identify the actionable retaliatory actions of the employer. The State further argued that the failure to list specific acts would allow the jury to consider actionable and non-actionable acts in the aggregate. Minze responded that if she were required to list the specific "adverse actions" in the instruction that she should not be limited to the two suggested by the State in its

9. On appeal, Minze argues that "MAI 38.01(A) is not an appropriate verdict directing instruction for a § 213.070(2) claim" and that she was attempting to give a non-MAI instruction that was "simple, brief, impartial" in accordance with Rule 70.02(b). Minze further argues that MAI 38.01(A) is not the mandatory verdict directing instruction for a retaliation claim. Minze argues that the non-MAI instruction that she submitted was necessary to accurately submit the claim under current law. It is clear from the record that, as in most cases, significant off-the-record discussions were had regarding how to properly submit this case to the jury. However,

the legal file does not include the "dirty" copy of the verdict directing instruction submitted by Minze, so we do not know the origins of that instruction, nor what was presented to the trial court regarding its origins. It is clear that the language contained in the instruction submitted by Minze and given to the jury was consistent with MAI 38.01 and nearly identical to the modified MAI 38.01 submitted by the State, with the exception of the disputed language discussed herein. Irrespective of the "source" of the instruction, the issue before this court is whether the instruction, as submitted to the jury, constituted a roving commission.

proposed instruction.[10] Because the trial court refused the State's instruction and gave the jury the instruction submitted by Minze, the discussion ended and any additional actions Minze would have wanted included in the instruction were not identified.

The State maintains that the instruction requires that specific actionable "adverse action" be identified, particularly where, as here, the plaintiff testified about numerous actions of her employer that she asserts are discriminatory or were taken against her in retaliation for her filing a grievance, but which, the State alleges, are not legally actionable. Such complaints, according to the State, would include being given a small office, not being allowed a second canine officer, not being allowed to take extra-strength Vicodin while at work, and not being paid for working with the canine at home after 5:00 p.m., among other things.

## I. Roving Commission

■ Recently, in discussing a similar issue, this court stated that the retaliatory act or acts must be listed and "limited to the allegations relating to actionable evidence." *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 256 (Mo.App.W.D.2012) (citation omitted). Words that make "actionable the aggregate of all of the defendant's conduct" are prohibited and amount to giving the jury a "roving commission." *Id.* (citing *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 482 (Mo. banc 2005)).[11]

■ Minze's proposed verdict director, accepted by the court, constituted an impermissible "roving commission." "A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suit its fancy or its perception of logic' to impose liability." *Scanwell*, 162 S.W.3d at 482 (quoting *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998)). The *Scanwell* court found that the defendant's verdict director was fatally defective because the jury was not limited to the allegations relating to actionable evidence because those allegations were preceded by the word *"including,"* which is a word of enlargement rather than limitation, thereby making actionable the aggregate of all of the defendant's conduct rather than limit-

---

**10.** Minze would, however, be limited to those alleged retaliatory actions that are actionable as opposed to all allegedly retaliatory actions that were admitted into evidence. Discriminatory acts that are not actionable cannot be submitted to the jury. *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 256–7 (Mo.App.W.D. 2012). However, in many cases, evidence of adverse actions that are time-barred or are otherwise non-actionable may be admissible for other purposes. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo.App. E.D.2009) (other incidents or complaints relevant to show intent); *State ex rel. Swyers v. Romines*, 858 S.W.2d 862, 864 (Mo.App.E.D. 1993) (time-barred incidents regarding other employees may be admissible to show pretext); *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 664 (Mo.App.W.D.1991) (evidence of acts of defendant other than those for which dam-

ages are sought, both preceding as well as following the particular acts, may be admissible to show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed). When such adverse actions are admissible and presented to the jury but are not actionable, the jury instruction needs to be sufficiently clear so that only actionable actions are submitted to the jury in the instruction.

**11.** In the case at bar, the petition did not allege a claim of a hostile work environment, constructive discharge or a continuing violation theory. Thus, our holding does not affect cases containing such claims. A claim based on an ongoing practice, may well require less specificity in the verdict director.

ing the allegations to actionable conduct. *Id.* The court concluded that the jury was thereby given a roving commission. *Id.*

We recently reached the same conclusion in *Tisch.* There, an employee submitted an instruction that listed specific actionable behavior allegedly conducted by the employer; however, the list was preceded by the word "including." 368 S.W.3d at 256. Referring to our Supreme Court's decision in *Scanwell,* we held "that Tisch's proffered instructions suffer from the same infirmity: by using the word '*including*,' the instruction impermissibly enlarged the scope of conduct for the jury's consideration beyond that which was actionable." *Id.*

We find that Minze's proffered instructions suffer from the same infirmity. By using only the words "adverse action," the instruction impermissibly enlarged the scope of conduct for the jury's consideration beyond that which was actionable. The jury had no guidance as to what factual determinations it had to make in order to find the actions of the employer to be actionable. It could not therefore properly determine whether there was evidence for a causal connection between Minze's complaint of sex discrimination and an actionable retaliatory action taken by the employer.

## II. Prejudice Resulted from the Roving Commission

■ Even if we find an instruction to be improper, we will reverse only if it is de-

termined that the error resulted in prejudice and materially affected the merits of the action. Rule 70.02(c); Rule 84.13(b). In the absence of an instruction that defines the law, "the jury was unaware of the conduct that the law prohibits and prejudice resulted." *Scanwell,* 162 S.W.3d at 481. "It may well be then, that the jury, in arriving at its verdict, took into consideration not only [actionable] evidence ... but also evidence of other [behaviors] that were not actionable." *Id.*

Here, the evidence contained more than one alleged act of retaliation such that the jury could be confused as to which "adverse action" the instruction was referring.[12] By not setting forth the·adverse actions that Minze believed were actionable, the jury could have considered all of Minze's various complaints about which she testified. Additionally, Minze first complained of gender discrimination to a Human Resources staff member in 2006 but did not file a formal complaint with the MCHR until 2008. Minze testified as to over two years' worth of behavior that she deemed discriminatory or retaliatory, as discussed *supra.*

■ "The test of correctness of an instruction is how the instruction will naturally be understood by the average juror." *Marion v. Marcus,* 199 S.W.3d 887, 895 (Mo.App.W.D.2006) (internal quotation marks and citations omitted). "[J]urors should be credited with ordinary intelli-

---

**12.** Hypothetically, if after making a claim of discrimination, the plaintiff was immediately terminated and the termination was clearly the only alleged act of retaliation by the defendant, this instruction may not be as objectionable. However, those are not the facts of this case and there were multiple alleged acts that Minze testified were done in retaliation to her filing of the grievance. Under the facts of this case the term "adverse action" was not given proper "flesh and meaning" during the course of the trial. *Williams v. Daus,* 114 S.W.3d 351, 371 (Mo.App.S.D.2003). *Cf. Klotz,* 311 S.W.3d at 767 (in determining whether jury instruction constituted a "roving commission," "[t]he issue is whether the phrase as used in the verdict director was misleading in the context of the evidence at trial"; "Where the testimony in a case explains a phrase used in the verdict director, there is no 'roving commission.'")

gence, common sense, and an average understanding of the English language." *Id.* Because the record contains evidence of various "adverse actions" by various employees of the State and the instruction leaves unclear which "adverse action" is referred to, the use of the term "adverse action" constitutes a roving commission. The instruction "submit[ted] an abstract legal question that allow[ed] the jury to roam freely through the evidence and choose any facts which suit[ ] its fancy or its perception of logic to impose liability." *Scanwell,* 162 S.W.3d at 482 (internal quotation marks and citations omitted). "Jurors must be informed of what alleged conduct they are permitted to consider in order to hold the defendant liable." *Centerre Bank of Kansas City Nat'l Ass'n v. Angle,* 976 S.W.2d 608, 618 (Mo.App.W.D. 1998) (internal citations omitted). "It is not permissible for the jury to roam through the evidence and choose any facts which suit its decision." *Id.* (citation omitted). Based on this instruction it is possible that the jury improperly considered non-actionable events that were barred by the statute of limitations in determining liability, when those actions were admitted solely to show a course of conduct.

Because the instruction did not contain a description of the alleged retaliatory acts, the jury was given a roving commission. Since it was unclear from the evidence which particular act(s) of the State the jury believed gave rise to its finding of liability, prejudice resulted.

### POINT II

Minze's second point on appeal is rendered moot by our determination of Point One. Accordingly, we decline to address it.

### CONCLUSION

Because the retaliation instruction contained a roving commission, it was error to so instruct the jury. Minze's motion for attorney fees is denied. The judgment is reversed and the case is remanded for a new trial.

All concur.