

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **COMMUNITY BANK OF RAYMORE,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD77275** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **March 3, 2015** |
| **PATTERSON OIL CO., INC.,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable Meryl L. Lange, Judge**

**Before Division I:** Cynthia L. Martin, Presiding Judge, and
Thomas H. Newton and Mark D. Pfeiffer, Judges

Community Bank of Raymore ("Bank") brought an action against Patterson Oil Co., Inc. ("Patterson Oil") for unlawful detainer. The Circuit Court of Cass County, Missouri, Associate Circuit Division ("trial court"), granted summary judgment to Bank on the issue of right to possession, and a jury returned a verdict for damages. The trial court entered judgment on the jury verdict in favor of Bank. Patterson Oil appeals. We affirm.

### Facts and Procedural History

Patterson Raymore, LLC executed a Deed of Trust dated June 15, 2009, on certain real property located at 715 Foxwood Drive, Raymore, Missouri ("Property"), to Bank, which deed

was recorded with the Cass County Recorder of Deeds at Book 3262, Page 407 ("P-R Deed of Trust").

SM Disposition, Inc. was appointed to serve as the successor trustee ("Successor Trustee") under the P-R Deed of Trust. On November 30, 2012, the Successor Trustee sent notice of foreclosure of the P-R Deed of Trust and of the trustee's sale scheduled to take place on January 2, 2013, to Patterson Oil, Patterson Raymore, LLC, PHC Development, LLC, Gary A. Hawkins, Valerie J. Hawkins, Chris L. Patterson, and Janice A. Patterson. Although all of these individuals and entities each received a copy of the foreclosure notice on or before December 6, 2012, none of them sought to enjoin the foreclosure sale in advance of the sale.

On January 2, 2013, the Successor Trustee foreclosed on the P-R Deed of Trust and held a non-judicial foreclosure sale of the Property. Bank was the highest bidder at the foreclosure sale. Following the foreclosure sale, the Successor Trustee issued a Trustee's Deed in favor of Bank conveying title to the Property to Bank on January 2, 2013, which deed was recorded with the Cass County Recorder of Deeds on January 3, 2013, at Book 3645, Page 0086 ("Trustee's Deed"). When Bank purchased the Property at the foreclosure sale, Patterson Oil was occupying the Property. On January 4, 2013, Bank sent Patterson Oil notice of the foreclosure sale and its ownership of the Property and demanded that Patterson Oil vacate the Property no later than January 18, 2013. A copy of the notice to vacate was also personally served upon Patterson Oil's President, Chris L. Patterson, on January 9, 2013. Despite this demand, Patterson Oil refused to relinquish possession of the Property.

Bank filed its Verified Petition for Unlawful Detainer on January 22, 2013. Bank moved for partial summary judgment on the issue of its right to *possession* of the Property and Patterson

Oil opposed Bank's motion. On July 24, 2013, the trial court entered its Findings of Fact and Conclusions of Law, granting Bank's partial summary judgment motion.

Thereafter, the issue of Bank's *damages* was tried to a jury on October 18, 2013. The jury returned a verdict in Bank's favor for the loss of rents and profits from January 18, 2013, to the date of its verdict in the amount of $27,000, finding that the monthly value of the rents and profits from the date of its verdict was $3000 per month. The trial court entered its final judgment in favor of Bank on October 22, 2013. The judgment awarded Bank "restitution of the Property" and damages in the "sum of $54,000, double the sum assessed by the jury, and also at the rate of $6000, double the sum found per month, for rents and profits,"[1] from October 18, 2013, until restitution of the Property to Bank, together with post-judgment interest and Bank's costs.

Patterson Oil filed a motion for judgment notwithstanding the verdict ("JNOV") and/or for a new trial, which the trial court denied on January 27, 2014.

Patterson Oil timely appeals, raising five points of error. Points I and V assert error in the trial court's grant of summary judgment; Point II challenges the trial court's denial of Patterson Oil's motion for JNOV/new trial; and Points III and IV assert instructional error.

**Points I and V – Summary Judgment**

**Standard of Review**

When we consider an appeal from the grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there

---

[1] Pursuant to section 534.330.1, the jury's award of damages against the defendant shall be doubled in unlawful detainer proceedings.

is no genuine dispute. Summary judgment tests simply for the existence, not the extent, of these genuine disputes." *Id.* at 378. Because the propriety of summary judgment is purely an issue of law, our review is *de novo. Id.* at 376.

**Point I**

In Point I, Patterson Oil argues that the trial court erred in granting summary judgment (for possession) in Bank's favor because Bank did not prove the authenticity of the P-R Deed of Trust under which the foreclosure proceedings occurred.

Patterson Oil essentially asserts that Successor Trustee wrongfully foreclosed on the Property because the P-R Deed of Trust, under which the foreclosure occurred, was forged. However, a defendant cannot assert wrongful foreclosure as a defense to an unlawful detainer action. *Cent. Bank of Kansas City v. Mika*, 36 S.W.3d 772, 775 (Mo. App. W.D. 2001); *see also Mortg. Assocs., Inc. v. Wiley*, 650 S.W.2d 13, 15 (Mo. App. E.D. 1983) (holding that defendant in an unlawful detainer action cannot attack the validity of the foreclosure sale under the deed of trust as a means of attacking the validity of the trustee's deed conveying title to the plaintiff).

"Issues relating to title or matters of equity, such as mistake, estoppel[,] and waiver cannot be interposed as a defense" to an unlawful detainer action. *Wells Fargo Bank v. Smith*, 392 S.W.3d 446, 450 (Mo. banc 2013) (internal quotation omitted). Section 534.210 explicitly states that "[t]he merits of the title shall in nowise be inquired into, on any complaint which shall be exhibited by virtue of the provisions of this chapter."

Property owners who dispute a lender's right or ability to foreclose upon their property have two options. They may either "(1) sue to enjoin the foreclosure sale from occurring, or (2) if the sale has occurred and the buyer has sued for unlawful detainer, bring a separate action

4

challenging the foreclosure purchaser's title[2] and seek a stay of the unlawful detainer action in that separate case." *Wells Fargo*, 392 S.W.3d at 461. "What a [property owner] may not do is wait until after the foreclosure and then challenge the validity of the sale as a defense in a subsequent unlawful detainer action." *Fed. Nat'l Mortg. Ass'n. v. Wilson*, 409 S.W.3d 490, 495 (Mo. App. E.D. 2013). Our Missouri Supreme Court has made clear that:

> Even where there may be latent defects in the foreclosure purchaser's title (or in the chain of interests preceding it) sufficient to support a claim that the purchaser's title is void, and even where there may be an adequate basis at law or equity to set aside the trustee's deed or the foreclosure sale which led to it, a foreclosure purchaser is entitled to bring an unlawful detainer action using the deed as evidence of the *fact* of the sale unless and until that deed has been declared void *in a proper action*.

*Wells Fargo*, 392 S.W.3d at 461.[3] An unlawful detainer action is not the proper action in which to challenge the validity of the foreclosure proceeding. "[S]tatutory unlawful detainer actions do not, cannot, and never were intended to resolve questions of ownership or the validity of title." *Id*. at 456. Patterson Oil is "not barred from raising equitable theories, claims of wrongful foreclosure, or other challenges to [Bank's] title. However, [it is] barred from trying to litigate such issues in response to [Bank's] limited action for possession under chapter 534." *Id.* Nothing in chapter 534 prevented Patterson Oil from raising any or all of its claims before the

---

[2] We find it no coincidence that our recent search of Missouri Case.net revealed that just such a quiet title action involving the same parties to this action is presently pending in the Circuit Court of Cass County, Missouri. Patterson Raymore, LLC and Patterson Oil have filed a 54-page, 17-count, quiet title action against Bank styled *Patterson Raymore, LLC, et al. v. Community Bank of Raymore*, 12 CA-CV01896. We likewise find it no coincidence that Patterson Oil is raising the same (and additional) issues affecting title to the property that they have raised in the present unlawful detainer proceeding.

[3] *Wells Fargo Bank v. Smith*, 392 S.W.3d 446, 454 (Mo. banc 2013), and *Federal National Mortgage Association v. Wilson*, 409 S.W.3d 490 (Mo. App. E.D. 2013), are *foreclosure* cases with procedural scenarios directly applicable to the present unlawful detainer proceeding. Patterson Oil ignores this precedent and cites to two cases in which superior right to possession relating to conflicting provisions of a *lease* was at issue. *See Edwards v. Hoxworth*, 258 S.W.2d 15 (Mo. App. 1953), and *Henze v. Shell Oil Co.*, 758 S.W.2d 93 (Mo. App. E.D. 1988). Here, Patterson Oil's defenses are rooted in claims of superior *title*, not *possession*, and the basis of title in this proceeding is a trustee's deed that contains no provision on which Patterson Oil relies to claim an interest in the property. Thus, *Edwards* and *Henze* are inapposite, and the precedent of *Wells Fargo* and *Wilson* cannot be ignored.

foreclosure sale occurred in an action to enjoin the sale; but since it did not do so, its claims must be litigated in a proceeding separate and apart from the unlawful detainer proceeding. *See id.*[4]

"To prevail in an unlawful detainer action [after property foreclosure proceedings], a plaintiff must demonstrate: (1) that the property was purchased at a foreclosure sale, (2) the defendant received notice of the foreclosure, and (3) the defendant refused to surrender possession of the property." *Wilson*, 409 S.W.3d at 495. Here, it is undisputed that Bank purchased the property at a foreclosure sale. It is also uncontested that the Trustee's Deed states that Successor Trustee gave more than twenty days' notice of the foreclosure sale by publication and by sending a copy of the advertisement by certified mail to Patterson Oil and to Patterson Raymore, as required by section 443.325. Pursuant to section 443.380, recitals in a trustee's deed after a foreclosure sale "shall be received as prima facie evidence in all courts of the truth thereof." Finally, there is no dispute that Patterson Oil has refused to surrender the Property. Bank thus, via undisputed facts, met the "narrowly define[d] . . . proof required [of] a plaintiff in an unlawful detainer action." *Wilson*, 409 S.W.3d at 495 (internal quotation omitted).

Point I is denied.

---

[4] Patterson Oil relies upon the dictum of a hypothetical scenario from a footnote in *State ex rel. Deutsche Bank National Trust Co. v. Chamberlain*, 372 S.W.3d 24 (Mo. App. W.D. 2012), to justify its argument that the holding in *Wells Fargo*, 392 S.W.3d at 454, should be ignored in our analysis. We decline Patterson Oil's invitation to disregard *Wells Fargo*. First, "[o]biter dicta, by definition, is a gratuitous opinion. . . . While dicta can be persuasive when supported by logic, it is not precedent that is binding upon us." *Ballenger v. Ballenger*, 444 S.W.3d 914, 916 (Mo. App. W.D. 2014) (internal quotation omitted). Second, the footnoted hypothetical scenario outlined in *Chamberlain* relates to questions of fact raised regarding admissibility of the conveyance deed sued upon in the unlawful detainer proceeding. *Chamberlain*, 372 S.W.3d at 31 n.10. Here, conversely, Patterson Oil's complaint relates to the authenticity of signatures in a security instrument, not the conveyance deed sued upon (i.e., Trustee's Deed) in the subject unlawful detainer proceedings. Third, as to the substance of *Chamberlain*, Patterson Oil ignores that the occupants of the property were, as in this case, attempting to challenge the "lawfulness" of the process that resulted in the foreclosing bank obtaining its trustee's deed. Notably, the *Chamberlain* court stated, "[t]he process through which title was obtained cannot be equitably attacked [in an unlawful detainer action], however, even if the independently asserted equitable claims could result in restoration of title to the unlawful detainer defendant." *Id.* at 30. Thus, ultimately, the holding in *Chamberlain* is of no aid to Patterson Oil's argument in the present case; instead, it supports the result reached in our ruling today.

6

**Point V**

Similarly, in Point V, Patterson Oil contends that the trial court erred in granting summary judgment (for possession) in favor of Bank because Bank did not prove that its claimed right to possession was superior to Patterson Oil's right of possession. Patterson Oil asserts that it was a party to a lease that predated the P-R Deed of Trust and that Patterson Oil purchased the Property pursuant to an option within the Patterson Oil lease prior to the Trustee's foreclosure sale. Hence, Patterson Oil's argument is premised on a dispute regarding allegedly superior title to the Property relating to an option to purchase that Patterson Oil claims to have exercised. Consequently, this argument again "proceeds from a flawed premise that the outcome of an unlawful detainer action turns on which party is able to 'demonstrate superior title.'" *Wells Fargo*, 392 S.W.3d at 457. An unlawful detainer action is *not* the proper action in which to challenge the merits of title.[5]

Point V is denied.

**Point II – Denial of Motions for Directed Verdict and for JNOV**

**Standard of Review**

"The standard of review of the denial of a JNOV is essentially the same as the overruling of a motion for directed verdict." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 14 (Mo. banc 2012). "A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence." *Id.* (internal quotation omitted). "To determine whether the evidence was sufficient to support the jury's verdict, an appellate court views the

---

[5] Furthermore, while Patterson Oil's point relied on asserts trial court error in granting summary judgment to Bank, its argument addresses a different topic—alleged error of the trial court in striking one of Patterson Oil's affirmative defenses—without providing a copy of the trial court's ruling striking the affirmative defense as required by Rule 84.04(h)(1). Irrespective, "[t]he argument shall be limited to those errors included in the 'Points Relied On.'" Rule 84.04(e). An argument that is not included within the points relied on is not preserved for appeal. *Coburn v. Mayer*, 368 S.W.3d 320, 326 n.4 (Mo. App. W.D. 2012). *See* Rule 84.13(a). While we have exercised our discretion to address the merits of Patterson Oil's complaint in our ruling today, we were under no obligation to do so.

7

evidence in the light most favorable to the verdict[,] and the plaintiff is given the benefit of all reasonable inferences." *Id.* We will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Id.*

**Analysis**

In Point II, Patterson Oil asserts that the trial court erred in denying its motions for directed verdict and motion for JNOV because Bank failed to present substantial and competent evidence regarding its claimed damages.

In an unlawful detainer action, damages for rents and profits "may be measured by the reasonable rental value of the rented premises during the period of unlawful detention and are not confined to the sum fixed by the lease." *Brittany Sobery Family Ltd. P'ship v. Coinmach Corp.*, 392 S.W.3d 46, 52 (Mo. App. E.D. 2013). When the amount of damages calculated is "within the range of evidence, an appellate court generally will decline to find the determination erroneous or to weigh the evidence." *Id.* (internal quotation omitted).

At trial, Bank presented evidence that Patterson Oil had leased the Property from Patterson Raymore since September 2, 1998, and paid $7500 per month rent during those fifteen years. Bank's retained expert opined that, based on comparable property with comparable uses, the reasonable rental value of the Property was $10,000 per month. Patterson Oil presented evidence that the rental value of the Property was between zero and $2500 per month. The jury found that, at the time of its verdict, the monthly value of the rents and profits from the Property was $3000. The jury's verdict for rents and profits was within the range of evidence presented by the parties. In fact, the jury's verdict was at the lower end of the spectrum of fair rental value

8

evidence that was admitted at trial. Plainly, there was sufficient evidence to support the jury's verdict.[6]

Point II is denied.

## Points III and IV – Instructions

### Standard of Review

"Whether a jury was instructed properly is a question of law this court reviews *de novo*." *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 198 (Mo. App. W.D. 2013). "Review is conducted in the light most favorable to the record, and, if the instruction is supported by any theory, then its submission is proper." *Id.* (internal quotation omitted). We reverse only if the instructional error resulted in prejudice that materially affects the merits of the action. *Id.* "The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* (internal quotation omitted).

### Point III

In Point III, Patterson Oil asserts that the trial court erred by instructing that the jury "must" award damages for "the loss of rents and profits" without conditioning the award on a finding "in favor of plaintiff." Patterson Oil alleges that the instruction misled and confused the jury by effectively directing a verdict on causation in favor of Bank without proof, prejudicing Patterson Oil.

---

[6] Patterson Oil also argues that the trial court erred in denying its motions for directed verdict and JNOV because there was no evidence presented that Bank or a potential tenant or third party would be willing to expend $750,000 for fixtures and equipment it claims was necessary to continue operating the Property as a gasoline station and convenience store. Patterson Oil fails to cite any authority to support this proposition. As we have identified in our ruling, Bank's burden to prove damages for rents and profits is limited to producing evidence of the reasonable rental value of the rented premises during the period of unlawful detention. We decline Patterson Oil's invitation to impose an additional burden of proof on Bank that is not required by law, particularly where Patterson Oil fails to direct us to any precedent supporting its proposition.

Instruction No. 7, which submitted the issue of damages to the jury, stated:

> You must award plaintiff such sum as you may find from the evidence will fairly and justly compensate plaintiff for the loss of rents and profits from January 18, 2013 to the date of your verdict. You must also state separately in your verdict such sum as you reasonably find to be the monthly value of the rents and profits from the property at the time of your verdict.

There is no instruction in Missouri Approved Instructions (MAI) for unlawful detainer cases. *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256, 260 (Mo. App. S.D. 1996). "An instruction not in the MAI, and therefore improvised, must conform to the theory of MAI: that the statement follow the substantive law and can be readily understood." *Piva v. Gen. Am. Life Ins. Co.*, 647 S.W.2d 866, 876 (Mo. App. W.D. 1983). "Instructions must be considered and read together when assessing any claim of error." *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 130 (Mo. App. W.D. 2006) (internal quotation omitted).

Instruction No. 7 is based upon MAI 27.05 [2012 Revision], the damages instruction in an ejectment action under section 524.110. Under MAI 27.05, an award of damages is conditioned upon a finding by the jury "in favor of plaintiff." Prior to submission of Instruction No. 7 to the jury, Patterson Oil proffered an instruction that included the introductory phrase, "If you find in favor of plaintiff," as in MAI 27.05, but the trial court rejected Patterson Oil's instruction as modified and accepted Bank's modified instruction, which tracked the language of section 534.310[7] that makes a verdict for damages in unlawful detainer actions mandatory. Patterson Oil argues that Instruction No. 7 was given in error because the jury was required to

---

[7] Section 534.310 provides:

Whenever the verdict of the jury or finding of the judge shall be for the complainant, damages shall be assessed as well for waste and injury committed upon the premises found to have been forcibly or unlawfully detained, as for all rents and profits due and owing up to the time of the rendering of the verdict or finding of the judge, and such verdict or finding shall also state the monthly value of the rents and profits of said premises.

award damages to Bank for lost rents or profits without finding in favor of Bank or that Patterson Oil's actions caused Bank actual damage.

First, the trial court resolved the issue of Bank's immediate right of possession when it granted summary judgment in Bank's favor. The trial court bifurcated the issue of damages, which was determined by the jury at a later time. Instruction No. 6, which Patterson Oil does not appeal as given in error, advised the jury that the trial court had "previously determined in this action that [Bank] has the right to possession of the property on and after January 18, 2013."

Second, "[w]hen the instructions are considered as a whole and there is no misdirection, any error[ ] is not prejudicial." *AgriBank FCB*, 919 S.W.2d at 262 (internal quotation omitted). The trial court had already determined right to possession of the Property in favor of Bank, and the jury was so informed in Instruction No. 6. The only issue before the jury was assessment of Bank's damages. Since the trial court had already found "in favor of Plaintiff," there was no need for the jury to make the same finding.[8]

Point III is denied.

### Point IV

In Point IV, Patterson Oil again asserts error with regard to Instruction No. 7, arguing that the trial court erred by failing to instruct the jury how it should measure lost "rents and profits," thereby erroneously allowing the jury a roving commission. We disagree.

---

[8] Patterson Oil also argues that it was prejudiced because Instruction No. 7 did not permit the jury to find that Bank did not suffer lost rents or profits. We disagree. The instruction required the jury to determine "such sum as you may find from the evidence will fairly and justly compensate [Bank] for the loss of rents and profits." Patterson Oil's president, Chris Patterson, testified at trial that the rental value of the Property was zero. Patterson Oil argued to the jury during closing argument that the rental value of the Property was zero. If the jury had accepted Patterson Oil's evidence and argument, the jury could have returned a verdict of zero under Instruction No. 7. That they didn't does not suggest instructional error; instead, it suggests that the jury found other evidence presented at trial to be credible and binding upon their oath to determine "fair and just" damages.

11

Prior to the submission of Instruction No. 7 to the jury, Patterson Oil proffered an instruction that included the following language to clarify how "rents and profits" should be measured:

> In an unlawful detainer action, damages resulting from the loss of "rents and profits" may be measured by the reasonable rental value of the Property during the period of the unlawful detainer from January 18, 2013, to the date of your verdict.

The trial court rejected Patterson Oil's instruction as modified.

The issue is whether the failure of the trial court to instruct on the definition of "rents and profits" misdirected, misled, or confused the jury as to the applicable rule of law concerning the monthly rate of damages for loss of rents and profits such that the merits and outcome of the case were materially affected.

MAI addresses the issue of defining terms appearing in MAI instructions:

> In practice, some confusion has arisen concerning definitions. Included in this book are indications in the Notes on Use for each instruction when it contains a term or phrase which must be defined. The definitions are necessary to interpret a legal term for a lay jury and they are utilized in accord with standard No. 4 of the 1963 report to the Supreme Court:
>
> (4) Is it stated in language the average juror can understand?
>
> Thus, when it is indicated that a term or phrase must be defined, it is error to omit the provided definition.

MISSOURI APPROVED JURY INSTRUCTIONS [MAI], HOW TO USE THIS BOOK, Committee Comment (2012 Revision), DEFINITIONS, MANDATORY OR PERMISSIBLE, pp. LII-LIII (7th ed. 2012). Even if not mandated by MAI, a trial court must define for the jury legal or technical terms occurring in the instructions because their meaning is not within the ken of the ordinary juror; however, "it need not define non-technical, readily understood words or commonly used words." *Rice v. Bol*, 116 S.W.3d 599, 609 (Mo. App. W.D. 2003).

Furthermore, the trial court has discretion whether to give a modified instruction defining terms not mandated by MAI:

> If you use a term not having an MAI definition which you believe should be defined, prepare a definition and tender it to the trial judge. Whether the judge gives a definition instruction which is not mandatory is largely discretionary. Giving a definition of an MAI instruction term obtained from an approved instruction is a modification of the instruction and is subject to all of the standards of modification.

MAI, HOW TO USE THIS BOOK, Committee Comment (2012 Revision), DEFINITIONS, MANDATORY OR PERMISSIBLE, p. LIII.

Instruction No. 7 is based upon MAI 27.05 [2012 Revision], the damages instruction in an ejectment action under section 524.110. Under MAI 27.05, damages are "such sum as you may find from the evidence . . . will fairly and justly compensate plaintiff for the loss of rents and profits from the date defendant received notice of plaintiff's right to possession to the date of your verdict." None of the MAI ejectment instructions, including MAI 27.05, requires the definition of "rents and profits," and there is no MAI defining "rents and profits."

The words "rents and profits" are not terms of art that denote a specific meaning in the law. "The test of correctness of an instruction is how the instruction will naturally be understood by the average juror." *Minze v. Mo. Dep't of Pub. Safety*, 437 S.W.3d 271, 278 (Mo. App. W.D. 2014) (internal quotation omitted). "[J]urors should be credited with ordinary intelligence, common sense, and an average understanding of the English language." *Id.* at 278-79 (internal quotation omitted). The words "rents and profits" are commonly used and readily understandable. The words provided the jury with sufficient instruction on this element of Bank's claim. We reject Patterson Oil's argument that the term "rents and profits" contained in Instruction No. 7 has a legal or technical meaning that misdirected, misled, or confused the jury

13

and that prejudiced Patterson Oil. Thus, the trial court did not err by not defining the term "rents and profits" in Instruction No. 7.

"A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suit its fancy or its perception of logic to impose liability." *Id.* at 277 (internal quotation omitted). Instruction No. 7 was not a roving commission because it did not assume any disputed facts or submit abstract legal questions to the jury.

Point IV is denied.

### Conclusion

The trial court's judgment is affirmed.

 

 

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Thomas H. Newton, Judge, concur.