IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
JONATHAN MIRFASIHI, )
 )
 Appellant, )
 )
v. ) WD84136
 )
HONEYWELL FEDERAL ) Opinion filed: March 30, 2021
MANUFACTURING & )
TECHNOLOGIES, LLC, )
 )
 Respondent. )

 APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

 Division Two: W. Douglas Thomson, Presiding Judge,
 Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

 Jonathan Mirfasihi appeals the final award of the Labor and Industrial Relations

Commission (“Commission”) denying his claim for workers’ compensation benefits. Mirfasihi

asserted he sustained a thumb injury in the course and scope of his employment at Respondent

Honeywell Federal Manufacturing & Technologies, LLC. After conducting a hearing, an

administrative law judge found Mirfasihi sustained a compensable injury and awarded him over

$22,000.00 in benefits. The Commission reversed, finding Mirfasihi failed to demonstrate that his

work duties were the prevailing factor causing his thumb injury. Finding no error, we affirm the

Final Award Denying Compensation issued by the Commission.
 Factual and Procedural Background

 Mirfasihi began working for Honeywell in 1984 as an electrical engineer, and for the last

15 years of his employment he held the position of program manager. His duties as program

manager included “writ[ing] proposals to get funding,” “writ[ing] reports,” “put[ting]

presentations together,” and “oversee[ing] the other people who work[ed] under [him].” Mirfasihi

spent “about 75” to “85 percent” of his time at work on the computer.

 “[S]omewhere in [the] time frame” of “December of 2016, January of 2017,” Mirfasihi

began to experience pain in his left hand. On March 15, 2017, Mirfasihi reported “this problem”

to his manager. At the direction of Honeywell, Mirfasihi saw Dr. Steelman on May 3, 2017.

Mirfasihi reported that he “awakens with no pain, then pain occurs as his workday progresses” and

his pain was associated “with using the keyboard space bar with his left thumb.” Mirfasihi had

“noticed restricted flexion and extension of his thumb as well as some triggering.” 1 X-rays of

Mirfasihi’s left hand revealed osteoarthritis “at the 1st CMC joint with mild subluxation” and

“mild to moderate degenerative changes in the DIP joints 1-5.”2 Dr. Steelman concluded that “the

most likely cause of [Mirfasihi’s] symptoms [was] the osteoarthritis, not his work-related

activities, i.e., keyboard use.” Dr. Steelman recommended Mirfasihi follow up with his primary

care physician. Based on this information, Honeywell did not accept Mirfasihi’s claim as

compensable and did not pay for any future medical care relating to his left thumb.

1
 “Triggering” is a type of tendonitis. “[I]t can be anything from just pain at that location, to pain and slight catching,
to actual locking[.]”
2
 “[T]he joint closest to the thumbnail is the IP joint [(which Dr. Steelman referred to as the ‘DIP’ joint)], the next
more proximal joint is the MP joint, and . . . the next joint back towards the wrist is the CMC joint.”

 2
 Mirfasihi retired from Honeywell on May 12, 2017 and three days later began employment

with Argonne National Laboratory as a program manager. At Argonne, his duties were “[p]retty

much” the same as at Honeywell, although he spent a “little bit less” time on the computer.3

 On July 5, 2017, Mirfasihi filed a claim for compensation with the Division of Workers’

Compensation, asserting that he had sustained a “left hand and left thumb repetitive motion injury

or disease” on March 15, 2017 while employed by Honeywell as a program manager. Specifically,

Mirfasihi asserted that he “was exposed to repetitive motion disease/cumulative trauma” and that

“[a]s a direct, proximate, and prevailing factor of his repetitive work duties, [he] suffered left hand

and left thumb repetitive motion injury or disease thereby directly causing permanent partial

disability, temporary total disability, and past and future medical bills.”

 In September 2017, Mirfasihi was examined by Dr. Maugans at Rockhill Orthopaedics.

Mirfasihi reported that his thumb had “been bothering him for about six months now,” there was

“no injury to it,” and “[i]t just kind of slowly came on out of the blue.” Dr. Maugans observed that

Mirfasihi could not “fully extend” his left thumb and it did “catch a little bit when he [flexed] it

down and he [was] sore right over the A1 pulley.” Dr. Maugans found, based on X-rays of the left

hand, that Mirfasihi had “very minimal degenerative changes at the CMC and MP joints there,

overall though things look[ed] well aligned.” Dr. Maugans assessed Mirfasihi as having “left

trigger thumb,” and gave him “a steroid injection in the left thumb A1 pulley.”

 Approximately six weeks later, Mirfasihi again saw Dr. Maugans. Mirfasihi reported that

“the injection helped for maybe a month,” but now his thumb was “just as sore as it ha[d] been.”

He stated that he was unable to “fully straighten out the thumb due to pain and stiffness there.”

3
 Mirfasihi retired from Argonne National Laboratory in July 2018, and after that date was no longer employed.

 3
Mirfasihi declined another steroid injection and instead opted to “move forward with surgical

intervention.”

 Mirfasihi underwent a “left thumb A1 pulley release” surgery in January 2018.4 He took

two weeks off of work at Argonne—without pay—to recover from the surgery. He participated in

physical therapy; his symptoms improved and he was discharged from care. After surgery

Mirfasihi’s thumb no longer “triggered,” but he did not have a full range of motion in his thumb

and he reported some residual soreness.

 At the request of his counsel, on September 1, 2018, Mirfasihi underwent an examination

by Dr. Neighbor, an orthopedic surgeon. Dr. Neighbor reviewed Mirfasihi’s medical records,5

conducted a physical examination, took X-rays of his left hand, and took “a history of injury and

current symptom status.” After completing the examination, Dr. Neighbor made the following

findings:

 [Mirfasihi] received shots[6] and it was better for a couple of weeks and then the
 problem came back. On 1/13/2018, he had a surgical release of the pulley.
 Currently, he has to use his right hand to open a jar. He states that he is unable to
 pick up his laptop with his left hand.

 On physical examination, he has 70 degrees of motion of the MP joint and equal.
 At the CMC joint was equal, but extension at the IP joint showed 40 degrees on the
 right, but only 5 degrees on the left.

 Pinch tests were performed at a level of 27 on the right and on 3 separate occasions,
 he showed only 13, a 50% decrease on the left. X-rays showed osteoarthritis in the
 1st CMC joint and mild subluxation and small osteophytes were present at the 1st
 CMC joint.

4
 An “A1 pulley release” is a surgery “designed to open up the pulley to make the tunnel larger . . . so the tendon can
more freely move in and out.”
5
 Dr. Neighbor did not appear to review the records from Dr. Steelman’s examination. Dr. Neighbor stated that the
“medical records which [he] reviewed indicate that [Mirfasihi] was first seen at RockHill orthopedics [sic] 9/28/2017,”
and he does not reference any visit with Dr. Steelman.
6
 The record reflects that Mirfasihi only received one steroid shot.

 4
 The diagnosis for the injury suffered by Mr. Mirfasihi due to the prevailing factor
 of the 3/15/17 work injury is an aggravation of the osteoarthritis of the joints and a
 trigger thumb at the A1 pulley in the left hand.[7]

 In my opinion, as a result of the injury on 3/15/17, Mr. Mirfasihi sustained a
 permanent partial disability of the left hand of 25%. This is based primarily on the
 loss of pinch strength.

 As a result of the 3/15/17 work injury, Mr. Mirfasihi was off work for a couple of
 weeks following the initial injection[8] and then also needed a couple of weeks
 following the release of the trigger thumb.

 The medical bills that [were] forwarded to me, I believe are reasonable, necessary
 and caused by the 3/15/17 work injury. The cost of the anti-inflammatory type
 medications needed due to the 3/15/17 work injury would be estimated at $500 per
 year. Due to the 3/15/17 work accident, Mr. Mirfasihi more likely than not will
 need additional surgery on the CMC arthritis and post operative care, including
 physical therapy, would be estimated to be $25,000.

 At the request of Honeywell’s counsel, on July 11, 2019, Mirfasihi underwent an

examination conducted by Dr. Walker, also an orthopedic surgeon. Dr. Walker reviewed

Mirfasihi’s medical records, took a patient history, conducted a physical examination, and took X-

rays of Mirfasihi’s left hand and thumb. The X-rays showed “mild to moderate thumb CMC, MP,

and IP joint osteoarthritic change.” Dr. Walker made the following findings:

 The records indicate that Mr. Mirfasihi previously had a left trigger thumb or flexor
 tenosynovitis at the A1 pulley. He had the appropriate treatment and has now
 recovered with a very good result after surgical treatment of this problem. Mr.
 Mirfasihi is at maximum medical improvement for his previous trigger thumb
 symptoms. He has sustained 2% permanent partial disability of the left thumb
 related to his previous trigger thumb symptoms and diagnosis. I do not expect him
 to require or benefit from any additional treatment for this problem. Mr. Mirfasihi’s
 job related activities at Honeywell are not consistent with being the prevailing cause

7
 At his deposition, Dr. Neighbor clarified what he believed to be the cause of Mirfasihi’s work injury:
 Q. [by Mirfasihi’s counsel] Based on reasonable medical certainty, was the repetitive motion of
 intense computer use, including keyboard pressing, pushing, and using the mouse repeatedly, and
 shuffling and thumbing through papers at work, the prevailing factor and the cause of Mr.
 Mirfasihi’s repetitive motion injury, need for treatment and surgical release of the pulley in the left
 hand . . . ?

 A. [by Dr. Neighbor] Yes.
8
 The record does not reflect that Mirfasihi took time off of work to recover after he received the steroid injection.

 5
 of his previous left trigger thumb symptoms and his job activities are unlikely to be
 related in any way to this diagnosis. Mr. Mirfasihi’s left thumb MP joint arthritic
 change may be a contributing factor for the trigger thumb diagnosis due to
 enlargement of the MP joint and capsule and the surrounding osteoarthritic
 inflammation.

 Mr. Mirfasihi is currently having some residual symptoms including pain, stiffness,
 and pinch/grip weakness related to osteoarthritis of the thumb CMC joint, MP joint,
 and IP joint. . . . Mr. Mirfasihi’s work related activities at Honeywell are not
 consistent with being the prevailing cause of his thumb osteoarthritis and his work
 related activities are unlikely to be related to the osteoarthritic diagnosis at all.

At his deposition, Dr. Walker was asked whether “hitting the spacebar” was “something that would

cause the type of issues that Mr. Mirfasihi had,” and he replied:

 It just doesn’t make any sense medically that that would - - those activities would
 cause those diagnoses. . . . To hit the spacebar really requires very little, if any,
 excursion of the tendon. That’s all related more to the CMC joint motion and not
 MP or IP joint motion. And it’s an extremely low force activity, as well.

Dr. Walker testified that he did not believe Mirfasihi’s “office work” “would have had any

significant influence on his osteoarthritis” and his “keyboarding” would not have been a factor “in

his trigger thumb phenomenon.”

 On November 8, 2019, the parties appeared for a hearing before an administrative law

judge with the Workers’ Compensation Division (“ALJ”). Mirfasihi was the only witness to testify

at the hearing. Mirfasihi testified that he “spent about 80 percent, 85 percent” of his time at work

on the computer. Although he was right-handed, he used his left thumb to press the space bar when

typing. He stated that he pressed the space bar with his thumb hundreds or thousands of times a

day. Additionally, he stated that “[a]bout 20 percent, 25 percent” of his job required traveling.

When he traveled he was required to bring his laptop, “which usually [he] put in a briefcase[.]” He

carried his briefcase in his left hand. Mirfasihi testified that he also transported his briefcase to and

from work at Honeywell when he was not traveling.

 6
 Due to the nature of his work, Mirfasihi had “top secret” security clearance. Mirfasihi

stated that in order to get to his desk at Honeywell, he passed through one “regular” door and three

“secure” doors. He had to “badge in” to pass through the secure doors. He used his right hand to

“badge in” and his left hand to open the door. The secure doors were “much heavier than average

doors.” Mirfasihi passed through the set of secure doors when he arrived at work, went to lunch,

went to meetings, and left work. He estimated that he passed through the set of secure doors two

to four times a day.

 When asked which of his job duties caused him pain in his left hand, Mirfasihi replied

“typing on the computers,” “carrying [his] briefcase,” “picking up and carrying [his] suitcase”

when traveling, and “opening doors in and out.”

 The ALJ admitted various exhibits into the record, including Mirfasihi’s medical records

and bills, Dr. Neighbor’s examination findings, Dr. Neighbor’s deposition transcript, Dr. Walker’s

examination findings, Dr. Walker’s deposition transcript, and Mirfasihi’s deposition transcript.

 On January 10, 2020, the ALJ issued an award finding that Mirfasihi “sustained an

occupational disease on March 15, 2017, arising out of and in the course of his employment,”

involving his “[l]eft upper extremity at the hand and thumb.” The ALJ found that “[a]t least 75%

of [Mirfasihi’s] job duties consisted of work on the computer preparing reports and presentations

where he would use the space bar button with the left thumb of his hand several thousand times

per day,” Mirfasihi had “to use his left hand to grip when opening and shutting four sets of very

heavy doors that required government security clearance just to get to his office daily,” and

Mirfasihi “was also required to carry a briefcase daily that contained his laptop and his client files,”

which “was regularly carried in his left hand.” The ALJ concluded that these “repetitive job duties

were the prevailing factor that caused [Mirfasihi’s] occupational disease on March 15, 2017.” The

 7
ALJ found credible the testimony of Dr. Neighbor and Mirfasihi, noting Mirfasihi “was consistent

in his answers throughout his testimony and his testimony corresponded with what had been

recorded by his treating and examining physicians.” The ALJ determined Mirfasihi was entitled

to compensation from Honeywell as follows:

 The employer shall pay to Employee 10% permanent partial disability to the left
 hand which equates to 17.5 weeks at $477.33 a week for a total of $8,353.28. The
 employer shall pay to Employee $1,822.54 for unpaid temporary total disability
 owed from January 23, 2018 to February 6, 2018. The employer shall pay to
 employee the sum of $11,293.00 as and for medical expenses employee incurred
 for treatment of his injuries. The employer shall also pay to Employee additional
 benefits of 2 weeks for disfigurement to Employee’s left hand equating to $954.66.

 Honeywell appealed by filing an application for review with the Commission. On October

7, 2020, the Commission issued a Final Award Denying Compensation, reversing the decision of

the ALJ.9 The Commission found that “[a]t the hearing before the administrative law judge on

November 8, 2019, [Mirfasihi] for the first time explained other aspects of work that might have

contributed to his triggering thumb,” including use of his left hand to carry his briefcase and

traveling through three sets of heavy secure doors. The Commission found that because “there

[was] no record of [Mirfasihi] informing Dr. Steelman, Dr. Maugans, Dr. Neighbor, or Dr. Walker

about opening heavy security doors or carrying a briefcase as possible causes of the triggering

thumb,” there was no “expert opinion as to the cause or effect” of these actions. The Commission

found that Mirfasihi’s speculation “that such activities contributed to [his] triggering thumb . . .

without medical support from an expert [was] not persuasive.” Thus, the Commission concluded

that “the only work duty at issue in this matter that was reviewed and analyzed by a medical expert

[was Mirfasihi’s] use of the keyboard.”

9
 One of the three Commission members filed a dissenting opinion.

 8
 Unlike the ALJ, the Commission found Dr. Walker’s opinion to be more persuasive than

that of Dr. Neighbor:

 We find persuasive the opinion from Dr. Walker that [Mirfasihi’s] work duties of
 typing were not the prevailing factor causing his medical condition of trigger finger
 in his left thumb. Dr. Walker explained the mechanism that primarily causes trigger
 finger, such as heavy gripping or squeezing. He further explained that the
 mechanism required to strike the spacebar with a left thumb would not result in
 triggering thumb. On the other hand, Dr. Neighbor did not provide any explanation
 to support his general opinion that [Mirfasihi’s] work was the prevailing factor
 causing his medical condition. We do not find Dr. Neighbor’s opinion persuasive.

The Commission noted that Dr. Neighbor “did not see the records from Dr. Steelman” and “did

not elaborate further” when he opined Mirfasihi’s condition was caused by repetitive motion in his

left hand.

 The Commission concluded that Mirfasihi “failed to meet his burden that his work duties

with employer were the prevailing factor resulting in or causing [his] medical condition of

triggering thumb,” and thus he did not “establish that he suffered a compensable injury by

occupational disease arising out of and in the course of his employment.” In light of its

determination, the Commission found that “[a]ll other issues of temporary total disability benefits,

past medical expenses, future medical benefits, and disfigurement compensation [were] moot.”

 Mirfasihi appeals, asserting four claims of error.10 In Points I, III, and IV, Mirfasihi asserts

the Commission “erred in theorizing [he] failed to meet his burden that his work duties” caused

his trigger thumb. In Point II, Mirfasihi asserts the Commission “erred in theorizing that it did not

have any expert opinion as to cause and effect of [his] actions of opening heavy security doors or

carrying a briefcase with his left hand.” Because our disposition of Point II is relevant to the other

points, we address that point first. Additional facts are set forth in our analysis.

10
 “Beginning January 1, 2006, only administrative law judges, the commission, and the appellate courts of this state
shall have the power to review claims filed under this chapter.” § 287.801, RSMo. All statutory references are to the
Revised Statutes of Missouri 2016.

 9
 Standard of Review

 This Court’s scope of review is prescribed by section 287.495.1, which permits us to

modify, reverse, remand for rehearing, or set aside the Commission’s award upon “the following

grounds and no other”: (1) the Commission acted without or in excess of its powers, (2) the award

was procured by fraud, (3) the facts found by the Commission do not support the award, or (4)

there was not sufficient competent evidence in the record to warrant the making of the award.

 “We examine the record as a whole to determine if the award is supported by sufficient

competent and substantial evidence, or whether the award is contrary to the overwhelming weight

of the evidence.” Nivens v. Interstate Brands Corp., 585 S.W.3d 825, 831 (Mo. App. W.D. 2019)

(internal marks omitted). “We review the award objectively and not in the light most favorable to

the award.” Id. “[W]e review issues of law, including the Commission’s interpretation and

application of the law, de novo.” Id. However, “[w]e defer to the Commission’s findings as to

weight and credibility of testimony and are bound by its factual determinations.” Cheney v. City

of Gladstone, 576 S.W.3d 308, 314 (Mo. App. W.D. 2019). “The Commission, as the finder of

fact, is free to believe or disbelieve any evidence.” Id.

 “The weight afforded a medical expert’s opinion is exclusively within the discretion of the

Commission.” Beatrice v. Curators of Univ. of Mo., 438 S.W.3d 426, 435 (Mo. App. W.D. 2014).

“Furthermore, where the right to compensation depends on which of two medical theories should

be accepted, the issue is peculiarly for the Commission’s determination.” Id.; Kuykendall v. Gates

Rubber Co., 207 S.W.3d 694, 706 (Mo. App. S.D. 2006) (“The acceptance or rejection of medical

evidence is for the Commission.”). “We will uphold the Commission’s decision to accept one of

two conflicting medical opinions if such a finding is supported by competent and substantial

evidence.” Kuykendall, 207 S.W.3d at 706 (internal marks omitted). “We will not overturn the

 10
Commission’s determination regarding conflicting medical opinions, unless it is against the

overwhelming weight of the evidence.” Id.

 Analysis

 Before we address Mirfasihi’s claims on appeal, we set forth the legal framework

governing whether an employee suffers a compensable injury under Chapter 287.

 An employer “shall be liable . . . to furnish compensation . . . for personal injury or death

of the employee by accident or occupational disease arising out of and in the course of the

employee’s employment.” § 287.120.1. An “occupational disease” is “an identifiable disease

arising with or without human fault out of and in the course of the employment.” § 287.067.1.

“Ordinary diseases of life to which the general public is exposed outside of the employment shall

not be compensable, except where the diseases follow as an incident of an occupational disease[.]”

Id. “An injury due to repetitive motion is recognized as an occupational disease[.]” § 287.067.3.

 “An occupational disease due to repetitive motion is compensable only if the occupational

exposure was the prevailing factor in causing both the resulting medical condition and disability.”

Id. “The ‘prevailing factor’ is defined to be the primary factor, in relation to any other factor,

causing both the resulting medical condition and disability.” § 287.067.2, .3. “Ordinary, gradual

deterioration, or progressive deterioration of the body caused by aging or by the normal activities

of day-to-day living shall not be compensable.” Id.

 In applying these statutory provisions, Missouri courts have held that “[t]o support a

finding of occupational disease, an employee must provide substantial and competent evidence

that [he has] contracted an occupationally induced disease rather than an ordinary disease of life.”

Greenlee v. Dukes Plastering Serv., 75 S.W.3d 273, 277 (Mo. banc 2002). “In order to show a

recognizable link between the disease and the job, a claimant must produce evidence establishing

 11
a causal connection between the conditions of employment and the occupational disease.” Cheney,

576 S.W.3d at 315 (internal marks omitted). “This evidence must be medical evidence and must

establish a probability that working conditions caused the disease, although they need not be the

sole cause.” Id. (internal marks and emphasis omitted). “The determination of whether an accident

is the ‘prevailing factor’ causing an employee’s condition is inherently a factual one.” Beatrice,

438 S.W.3d at 435.

 Point II

 In his second point, Mirfasihi asserts the “Commission erred in theorizing that it did not

have any expert opinion as to cause and effect of Mr. Mirfasihi’s actions of opening heavy security

doors or carrying a briefcase with his left hand, because it misstated the record, in that Dr. Walker

opined heavy or repetitive gripping, squeezing that requires high force along the tendons and high

excursion or travel of the tendons is a risk factor of trigger thumb.”11 We disagree, and find that

the record contained no expert opinion that Mirfasihi’s work activities of opening secure doors or

carrying his briefcase caused or contributed to his medical condition, and thus, the Commission

did not “misstate the record.”

 In support of this point, Mirfasihi points to Dr. Walker’s response at his deposition when

asked to explain “what can cause a triggering phenomenon, either in the thumb or in fingers, just

generally.” Dr. Walker replied:

11
 As stated above, our review of the Commission’s final award is limited to the four grounds described in section
287.495.1, however none of Mirfasihi’s points relied on challenge the Commission’s award on those statutorily
enumerated grounds. Be that as it may, in the argument sections of Points I and II, Mirfasihi appears to argue the facts
found by the Commission do not support the award and in the argument sections of Points III and IV he appears to
argue there was not sufficient competent evidence in the record to warrant the making of the award. Although a claim
on appeal is not properly preserved unless included in the point relied on, we nonetheless exercise our discretion to
address the merits of his claims. See Cmty. Bank of Raymore v. Patterson Oil Co., 463 S.W.3d 381, 387 n.5 (Mo. App.
W.D. 2015) (noting that an argument “not included within the points relied on is not preserved for appeal,” but
nonetheless exercising discretion to address the merits of the appellant’s unpreserved claims).

 12
 And so trigger finger or trigger thumb is one of the most common things we see,
 affects many people of all walks of life, often incidental onset. Things that can
 increase risk factors for trigger fingers or trigger thumb, any inflammatory
 conditions, rheumatoid arthritis, rheumatologic conditions, gout has been
 implicated, diabetes can be a risk factor. Those are common medical conditions.
 The heavy or repetitive gripping, squeezing that requires high force along the
 tendons and high excursion or travel of the tendons can be a risk factor. . . .”

(emphasis added). Contrary to Mirfasihi’s assertions, this testimony was not medical expert

evidence “as to cause and effect of [Mirfasihi’s] actions of opening heavy security doors or

carrying a briefcase with his left hand.”

 Although Dr. Walker described possible risk factors of trigger thumb to include the type

of gripping or squeezing “that requires high force along the tendons and high excursion or travel

of the tendons,” he did not consider or opine whether Mirfasihi’s actions of opening secure doors

or carrying his briefcase resulted in that type of gripping or squeezing. Medical evidence, not

merely the speculation of a lay person such as Mirfasihi, was necessary to establish that these

actions could be risk factors for trigger thumb because they required “high force along the tendons

and high excursion or travel of the tendons.” See Beatrice, 438 S.W.3d at 435 (“Medical causation,

which is not within common knowledge or experience, must be established by scientific or medical

evidence showing the relationship between the complained of condition and the asserted cause.”).

Furthermore, Dr. Walker did not otherwise define “heavy” or “repetitive” gripping, and because

Mirfasihi never reported to Dr. Walker—or any other medical provider—that opening secure doors

or carrying his briefcase caused him pain or triggering, there was no opportunity for a medical

provider to consider or state an opinion as to whether these specific activities constituted the type

of “heavy or repetitive gripping [or] squeezing” that could have caused his trigger thumb, as

Mirfasihi speculates.

 13
 In light of the above, we find the Commission did not err “in theorizing that it did not have

any expert opinion as to cause and effect of Mr. Mirfasihi’s actions of opening heavy security

doors or carrying a briefcase with his left hand.” The facts found by the Commission support the

final award. See Angus v. Second Injury Fund, 328 S.W.3d 294, 300 (Mo. App. W.D. 2010) (“The

question of causation is one for medical testimony, without which a finding for claimant would be

based upon mere conjecture and speculation and not on substantial evidence.” (internal marks

omitted)).

 Point II is denied.

 Point I

 In his first point, Mirfasihi asserts the “Commission erred in theorizing [he] failed to meet

his burden that his work duties caused his trigger thumb.” He asserts that “a work accident can be

the prevailing factor in causing an injury sustained due to the aggravation of preexisting,

asymptomatic degenerative condition” and that the Commission both failed to consider “his

asymptomatic osteoarthritis becoming symptomatic due to the work injury” and disregarded the

opinion of Dr. Walker—which it found persuasive—“conced[ing] the osteoarthritis was now

symptomatic, and could be . . . contributing to the trigger thumb.” We struggle to understand

Mirfasihi’s argument. Although he asserts the Commission failed to properly consider the effects

of his “work accident” and “work injury,” the Commission expressly found that he did not suffer

an accident or occupational disease arising out of and in the course of his employment. In other

words, the Commission found no “work accident” or “work injury” occurred.

 To the extent Mirfasihi is arguing the Commission failed to consider whether his work

duties caused or aggravated his osteoarthritis, we find such assertions are not supported by the

record. The Commission expressly found persuasive Dr. Walker’s findings that Mirfasihi’s joint

 14
tenderness and stiffness were likely arthritis-related but that his work activities “were not the

prevailing factor causing [his] trigger fingering in his left thumb or his osteoarthritis.”

Additionally, the Commission noted that Dr. Neighbor opined Mirfasihi’s work duties aggravated

his osteoarthritis, but “did not find the opinion of Dr. Neighbor persuasive.” Thus, the Commission

did consider whether Mirfasihi’s osteoarthritis was caused or aggravated by his work duties, but

simply found that it was not.

 To the extent Mirfasihi is arguing the Commission disregarded persuasive evidence from

Dr. Walker that his osteoarthritis contributed to his trigger thumb, we find this argument misses

the mark. Whether Mirfasihi’s osteoarthritis contributed to his trigger thumb is not relevant to his

argument; rather, Mirfasihi must demonstrate that his work activities caused his medical condition.

See Cheney, 576 S.W.3d at 315 (the claimant must establish “a causal connection between the

conditions of employment and the occupational disease”). As described above, Dr. Walker

specifically found that Mirfasihi’s work activities did not cause his osteoarthritis or trigger thumb,

and the Commission did not find credible Dr. Neighbor’s opinion to the contrary. Proving that his

osteoarthritis contributed to his trigger thumb, without proving that working conditions caused his

osteoarthritis or trigger thumb, would not establish Mirfasihi suffered an accident or occupational

disease arising out of and in the course of his employment.

 Point I is denied.

 Point III

 In his third point, Mirfasihi argues the “Commission erred in theorizing [he] failed to meet

his burden that his work duties with Employer caused his trigger thumb, because it ignored

favorable opinions of Dr. Walker, in that the Commission cannot ignore uncontroverted

 15
testimony.” Specifically, Mirfasihi asserts “the Commission ignored the following three separate

opinions of Dr. Walker in issuing its Award:”

 1. Mr. Mirfasihi’s preexisting condition or left thumb MP joint osteoarthritis may
 be a contributing factor for the trigger thumb diagnosis.

 2. “Osteoarthritis in the hand and fingers has an unknown single specific cause . . .
 . Oftentimes, it’s accumulated aging process AND usage throughout a lifetime.”

 3. [“]Trigger finger or thumb is one of the most common things we see. . . . The
 heavy OR repetitive gripping, squeezing that requires high force along the tendons
 and high excursion or travel of the tendons can be a risk factor of [trigger thumb].”

(emphasis supplied by Mirfasihi) (citations to the record omitted).

 However, the Commission did not “ignore” the opinions of Dr. Walker cited above; rather,

it is Mirfasihi who ignores Dr. Walker’s express finding that his work activities did not cause his

osteoarthritis or trigger thumb. In light of this finding, and as previously discussed, Dr. Walker’s

opinion that Mirfasihi’s osteoarthritis may have contributed to his trigger thumb (the “first”

opinion cited above) provides no support for Mirfasihi’s contention that his work duties caused his

medical condition. Similarly, Dr. Walker’s opinion that oftentimes osteoarthritis is the result of

accumulated aging and usage throughout a lifetime (the “second” opinion) does not support

Mirfasihi’s claim, given that Dr. Walker expressly found Mirfasihi’s computer usage was not the

type of “usage” that would cause his medical condition. As to the “third” of Dr. Walker’s opinions

cited by Mirfasihi, as we discussed in relation to Point II, Dr. Walker’s testimony that certain types

of “heavy or repetitive gripping [or] squeezing” could be risk factors for trigger thumb did not

constitute medical evidence establishing that Mirfasihi’s work activities caused or contributed to

his medical condition.

 The Commission did not “ignore” the “favorable” opinions of Dr. Walker cited above;

rather the opinions—when considering the entirety of Dr. Walker’s findings, including his finding

 16
that Mirfasihi’s work duties did not cause his medical condition—were just not favorable to

Mirfasihi, and did not provide support for his claim.

 Point III is denied.

 Point IV

 In his fourth point, Mirfasihi argues the “Commission erred in theorizing [he] failed to

meet his burden that his work duties with Employer caused his trigger thumb, because it

disregarded undisputed and uncontroverted testimony of Mr. Mirfasihi, in that the Commission

may not arbitrarily disregard or ignore competent, substantial, and undisputed evidence of

witnesses not impeached or base its findings on conjecture or its own opinion.”

 In support of this point, Mirfasihi cites to his “undisputed and uncontroverted” testimony

describing the repetitive activities he performed at work with his left hand and that he had “no

complaints, limitations or restrictions with his left hand prior to working for” Honeywell. While

we agree this testimony was not controverted by any witness, it did not establish causation. As we

have stated numerous times, medical evidence was required to establish causation here, and thus

Mirfasihi’s description of his work activities and symptoms, while undisputed by any other

witness, was insufficient to prove his claim.12 Additionally, we note that in its final award the

Commission cited to Mirfasihi’s testimony describing his work activities and symptoms. We,

therefore, disagree with Mirfasihi that the Commission disregarded his testimony and that such

testimony established his work duties caused his medical condition.

12
 We do not mean to suggest that the Commission was required to believe Mirfasihi’s testimony simply because it
was uncontroverted. “The Commission, as the finder of fact, is free to believe or disbelieve any evidence.” Cheney,
576 S.W.3d at 314. Although Mirfasihi’s testimony was not disputed by any witness, the Commission noted that
Mirfasihi never reported to medical providers that opening security doors or carrying a briefcase caused him pain, and
did not raise these issues until the hearing before the ALJ.

 17
 Mirfasihi additionally argues in this point—although he does not include this issue in his

point relied on—that the Commission’s finding that he “failed to meet his burden that his work

duties were the prevailing factor resulting in or causing his medical condition of trigger thumb, is

not probative and no reasonable mind could believe the Commission’s proposition on the record

as a whole.” He asserts “there is no record that anything but Mr. Mirfasihi’s occupational duties

caused his medical condition.” This is a mischaracterization of the record. Both Dr. Steelman and

Dr. Walker concluded that something other than Mirfasihi’s occupational duties caused his

medical condition. To the extent Mirfasihi suggests Honeywell bore a burden to establish the non-

occupational cause of his condition, such an argument would be contrary to the law, as the burden

to prove the cause of his medical condition rested entirely with Mirfasihi. See Kersey v. Autry

Morlan, Inc., 388 S.W.3d 644, 650 (Mo. App. S.D. 2013) (“It was Claimant’s burden to prove that

the accident was the prevailing factor in causing his [medical condition]” and “Employer was not

obligated to disprove Claimant’s case or establish that another noncompensable event caused

Claimant’s injuries.”).

 Point IV is denied.

 Conclusion

 We affirm the Final Award Denying Compensation issued by the Commission.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

 18